# SARITA KEDIA
### LAW OFFICES, P.C.

5 EAST 22ND STREET, SUITE 7B
NEW YORK, NEW YORK 10010
WWW.KEDIALAW.COM

INFO@KEDIALAW.COM

TEL: 212.681.0202
FAX: 212.614.0202

November 29, 2010

**BY HAND AND BY ECF**

Honorable Sandra L. Townes
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

Re:    *United States v. Michael Persico, 10 Cr. 147 (SLT)*

Dear Judge Townes:

      We respectfully write in response to the government's most recent letter dated November 19, 2010, with which it has submitted brief excerpts of a few recordings on which James Bombino ("Bombino") is heard speaking.[1]  Notably, Mr. Persico is once again not heard on a single recording the government cites.  And, remarkably, two of the excerpts – dated December 11, 2009, and December 17, 2009 (see Govt. Ltr. dated 11/19/10 at 11-20) – are the very same recordings that the government initially submitted in support of its detention bid and that were found by the Second Circuit to show that "[Mr.] Persico used any influence he had in order to discourage violence."  United States v. Persico, 376 Fed.Appx. 155, 157 (2d Cir. 2010).  Critically, none of the recordings supports the government's argument that Mr. Persico presents any safety risk.

---

[1]  Because the government's draft transcripts contain numerous errors, we submit with this letter draft transcripts containing revisions to the government's September 1, December 11, December 17 and June 10, 2009 draft transcripts.  We also include draft transcripts of additional portions of the recordings dated September 1, December 11 and December 17, 2009.  We are not filing the draft transcripts by ECF.

Honorable Sandra L. Townes
United States District Judge
November 29, 2010
Page 2

**The September 1, 2009 Recording**

      The government claims that, in this recording, "Bombino boasted to the cooperating witness that, ever since he began reporting directly to Michael Persico, he had been 'put in the middle of everything'" and that this somehow shows that Mr. Persico is a safety risk.  Govt. Ltr. dated 11/5/10 at 11.  Because the government "misidentified" this recording in its November 5, 2010 letter (see Govt. Ltr. dated 11/19/10 at 8, n.3), we did not address it in our reply.  We do so now.  As shown below, the portion of the recording the government cites has no bearing on whether Mr. Persico poses a safety concern.  Indeed, Bombino's statements directly following those cited by the government forcefully demonstrate that just the opposite is true.

      In the portion of the recording just prior to that cited by the government, Bombino is heard speaking about his inability to pay his company's truck drivers because Testa had not yet paid him.  In discussing the best way to get paid, Bombino is heard saying that he is "answer[ing] directly to Michael" and "answering directly to Tommy."[2]  Sept. 1, 2009 Recording.  As other recordings show, Bombino speaks to Mr. Persico and Mr. Petrizzo about getting paid by Testa because they have a prior relationship with the owner of Testa which Bombino believes will be helpful to him.  Jul. 16, 2009 and Dec. 11, 2009 Recordings.  But when Bombino is dissatisfied with any advice Mr. Persico gives, Bombino makes clear that he "don't answer to Michael" and will "go against" Mr. Persico's advice.  Jan. 22, 2010 and Jan. 29, 2010 Recordings.

      Critically, just after the snippet cited by the government, Bombino discusses at length Mr. Persico's character and demeanor and Bombino's belief that Mr. Persico would not associate himself with anyone who spoke or behaved in an aggressive, threatening or gangster-like manner.   In this regard, Bombino and Steven Marcus, the cooperating witness, say this:

| | |
|---|---|
| J. Bombino: | Michael don't hang out with anybody. |
| Marcus: | I know. |
| J. Bombino: | He don't hang out with anybody that's not a fuckin' business associate of his or a dear friend of the family from |

---

[2]  "Tommy" refers to the defendant Thomas Petrizzo, who is Mr. Persico's father-in-law and a long-time consultant to Testa.  Although the government initially sought to detain Mr. Petrizzo, claiming that he posed a great risk of danger because of his "power" and "influence," see Govt. Det. Mem. dated March 9, 2010, at 36-40, he is no longer on electronic monitoring and is free to travel throughout the country.

Honorable Sandra L. Townes
United States District Judge
November 29, 2010
Page 3

his father.  That's it.  Michael won't meet new people.
Michael doesn't talk; Michael lets you do the talking.
Michael's a very sharp kid.  And he did it to me today on
the phone.  He's been doing it to me for a while.  It's
getting less because I think I've already proved myself to
the guy.  And you gotta remember, I only met Michael this
time that Teddy came home.  As long as I know Teddy, I
never knew Michael --

Marcus:             Yeah, I know Michael back ...

J. Bombino:         I didn't know him.

Marcus:             2002, 3.

J. Bombino:         He knew of me because Teddy would always speak highly
                    of my brother and me so the whole family knows who I am,
                    but they don't really know who I am, you know what I'm
                    saying.  Now Michael's starting to learn who I am and what
                    I am, put it that way.

Marcus:             Right, right.

J. Bombino:         But he, he (Michael) tested me today 'cause I told my
                    brother the story.  He says, "He was testing you again."  I
                    said, "Yeah, I know."  Because when I was telling him
                    (Michael) what Brad did, I said, "This kid called me up,
                    'Fuckin, who the fuck do you people think you are?'" He
                    (Michael) said, "Yeah, uh huh.  And what did you say?"
                    That's what Michael said to me.  I said, well, I said,
                    "Brad," I said, "Let's be gentlemen here.  I'm speaking to
                    you like a gentleman; you're cursing me out.  This is
                    insane.  I'm just a truck driver.  I own a trucking company.
                    I came from driving the truck to owning the trucking
                    company.  I didn't graduate from Harvard and get a big job
                    for Testa that I'm the project manager.  I'm a truck driver
                    who's out 260,000 dollars.  So if I'm a little on edge, you
                    have to forgive me.  It's hard to be in my position."  "Um,

Honorable Sandra L. Townes
United States District Judge
November 29, 2010
Page 4

hmm." He (Michael) just listened. And I said – he (Michael) said, "Then what happened?" "Oh, he (Brad) continued for a little longer. And the more he (Brad) got nasty with me, the nicer I got with him, until eventually he must have felt stupid and he stopped." "Okay, very good. Alright, I'll call you later." <u>So you know, if I would have told him that I said, "You fucking jerk off, I'll come there," Michael would have been done with me</u>. Yeah, yeah, he don't want to --

Marcus:              That's not the way you, you want to conduct yourself.

J. Bombino:         He said, "<u>We're not gangsters. We're U/I business. We're not gangsters. We don't do gangster things</u>." He says it himself. "<u>Those days are over. We're running a legitimate business here. Nobody wants to act like a gangster. What is that kid talking like that for?</u>" "Mike, honestly, I don't know."

Marcus:              Trying to push buttons.

J. Bombino:         I said, "Personally," that's what I said, "Personally, I think he tried to push my buttons. I don't know who's in his ear and who's talking to him or whatever or what he thinks. I think he tried to get my goat and he tried to get me to be stupid. But you know what, he's 33 years old, he's young enough to be my fucking son, he don't wake up early enough to get me to be stupid, okay." He says, "No, no, no, you did good. Don't worry about it. I'll call you later." And then Tommy called me a little after that. So he must have got on the phone. If you do right by Michael, Michael will do anything for you. <u>Michael is really a good-hearted guy</u>.

Marcus:              He sure is.

Sept. 1, 2009 Recording:  48:53-51:39.

Honorable Sandra L. Townes
United States District Judge
November 29, 2010
Page 5

Bombino's words crystallize our point: Bombino tells Marcus that he speaks differently to Mr. Persico than he does to others because Mr. Persico would not associate with Bombino if he (Mr. Persico) knew that Bombino engaged in intimidating or foolish talk.[3]  Indeed, if Bombino told Mr. Persico that he spoke to anyone in an unprofessional manner, Mr. Persico "would have been done with" him because Mr. Persico "do[es]n't want to" associate himself with anyone who "act[s] like a gangster."  Rather, Bombino explains, Mr. Persico wants those connected to him to conduct themselves like "legitimate business[men]" and "gentlemen."

Bombino also observes that Mr. Persico "don't hang out with anybody" – meaning "gangsters" – and limits his contacts to people he believes are "legitimate business" associates or family friends.  He describes Mr. Persico as someone who is "really goodhearted" and will "do anything for you" if you "do right by" him – in other words, do not say "stupid" things or "do gangster things."

In short, this recording is compelling evidence that Mr. Persico does not pose any safety risk and has only disapproved of, and discouraged, threatening or violent behavior.  The government's misrepresentation of it as evidence that Mr. Persico poses a safety concern is symbolic of the distortion in which the government has engaged throughout the extensive bail proceedings.  Indeed, it is precisely this type of deception that caused Mr. Persico to be wrongfully detained for more than two months.

**The June 10, 2009 and June 17, 2009 Recordings**

Because the new evidence convincingly shows that Mr. Persico disapproved of and discouraged violence, the government turns to evidence having nothing to do with the issue at hand.  Thus, the government cites recordings that it claims show that "Michael Persico controls and will benefit from All Around Trucking, even though Bombino and others bear all of the financial risk."  Govt. Ltr. dated 11/05/10 at 12.  But even that inference is belied by later recordings which show that Mr. Persico did not, in fact, "put up a dime" in the business, but rather only "gave [Bombino] a 12,000 dollar check that [Bombino] returned in three days."  Sept. 24, 2009 and Feb. 15, 2010 Recordings.  Moreover, the government's most recent interpretation of the evidence – that "Bombino, Bombino's brother and the cooperating witness discuss their

---

[3]  Notably, in the December 17, 2009 recording, Bombino also stated that he did not speak with Testa in a rude manner:  "I didn't say nothing bad.  I didn't say anything out of line."  Dec. 17, 2009 Recording.  This is true, even though Bombino "didn't know it was Steven Testa" to whom he was speaking because Mr. Persico had not "prep[ped]" him.  Id.  Later recordings show that Bombino also spoke with Testa's treasurer Paula Demaio only in a polite, professional manner.  Jan. 29, 2010 and Feb. 15, 2010 Recordings.

Honorable Sandra L. Townes
United States District Judge
November 29, 2010
Page 6

fear that Persico is planning to set up and steer jobs to a competing company" (Govt. Ltr. dated 11/05/10 at 12) – also undermines its prior claim that Mr. Persico "organized, funded and managed" All Around Trucking.  <u>See</u> Govt. Ltr. dated 3/23/10.[4]

Most importantly, these recordings do <u>nothing</u> to further the inference that Mr. Persico was "willing [ ] to direct the use of violence in the event that Testa Corporation failed to timely pay its outstanding debt to the company."  Govt. Ltr. dated 11/05/10 at 12.  Instead, all of the new evidence reinforces the "competing" inference that "<u>at the very least</u> [Mr. Persico] appeared to use his influence to <u>discourage</u> physical violence."  Transcript of Proceedings dated May 18, 2010, at 12 (emphasis added).

## <u>The August 27, 2009 and October 16, 2009 Recordings</u>

Perplexingly, two of the excerpts that the government submits – August 27, 2009, and October 16, 2009 – do not involve Mr. Persico.  Indeed, Mr. Persico is not referenced in any way.  Thus, it appears that the government submitted these recordings simply to mislead and incite the Court, although it claims to have submitted them in support of its position that "James Bombino and Patrick Bombino [ ] are willing and able to use violent means to collect debts." <u>See</u> Govt. Ltr. dated 11/05/10 at 11.  But again, the question before the Court is not whether the Bombinos might have been willing to use threats or violence, but rather whether <u>Mr. Persico</u> presents a safety risk.  And, significantly, in Bombino's discussions with Louis Romeo (a co-defendant) and Marcus about instilling fear to collect debts, Bombino does not suggest seeking Mr. Persico's guidance or permission.  Rather, Bombino suggests that Romeo and Marcus go to "[Bombino's] friends," "Eson" and "the black guys."

Moreover, Bombino's August 27 statements are made just a few days before the September 1 conversation (discussed above) in which Bombino admits he would never tell Mr. Persico that he spoke offensively to someone – let alone that he threatened someone – because Mr. Persico would then "be[ ] done with" him.  Sept. 1, 2009 Recording.  Indeed, the recordings show that Bombino's manner when Mr. Persico is present is markedly different.  On those occasions, Bombino does not speak about using intimidation or violence.

---

[4]  While numerous additional recordings demonstrate the falsity of the government's claim regarding Mr. Persico's "involvement" in All Around Trucking, we have not submitted them as they are not significant to the issue presently before the Court.

Honorable Sandra L. Townes
United States District Judge
November 29, 2010
Page 7


      Notably, although Romeo and Bombino are heard engaging in discussions about intimidation and violence, they are both released on less restrictive conditions than Mr. Persico. Thus, as the February 11, 2010 recording makes clear, it is only because of "his last name" – *i.e.*, "who his father is" and "who his brother is" – that the government presses for excessive restrictions here.

## **Conclusion**

      The Bail Reform Act provides that the Court "shall" order a person's release on the "least restrictive" conditions that can "reasonably assure" the safety of the community. 18 U.S.C. § 3142(c)(1)(B).  Mr. Persico is therefore entitled to the bail modification he seeks.  Accordingly, we respectfully request that his bail conditions be modified to those previously recommended by Pretrial Services.


                           Respectfully submitted,
                           /s/
                           Sarita Kedia

                           Paul Shechtman


cc:   Amy Busa
      Michael Tremonte
      Assistant U.S. Attorneys