UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA

                                              S2 10 Cr. 147 (SLT)

    -against-

MICHAEL PERSICO,

        *Defendant.*

-------------------------------------------------------------X

# REPLY MEMORANDUM IN SUPPORT OF MICHAEL PERSICO'S MOTION TO QUASH A SERIES OF POST-INDICTMENT SUBPOENAS AS AN ABUSE OF THE GRAND JURY PROCESS

                                       Sarita Kedia
                                       Sarita Kedia Law Offices, P.C.
                                       5 East 22nd Street, Suite 7B
                                       New York, New York 10010
                                       (212) 681-0202

                                       Paul Shechtman
                                       Zuckerman Spaeder LLP
                                       1540 Broadway, Suite 1604
                                       New York, NY 10036
                                       (212) 704-9600

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA

        -against-

MICHAEL PERSICO,

        *Defendant.*

-------------------------------------------------------------X

S2 10 Cr. 147 (SLT)

**REPLY MEMORANDUM IN SUPPORT OF
MICHAEL PERSICO'S MOTION TO QUASH A
SERIES OF POST-INDICTMENT SUBPOENAS
AS AN ABUSE OF THE GRAND JURY PROCESS**

**INTRODUCTION**

Michael Persico respectfully submits this memorandum in further support of his motion to quash the post-indictment grand jury subpoenas issued by the very office prosecuting his pending case. For the reasons discussed below and in his prior submission, his motion, we respectfully submit, should be granted. Moreover, the government should be directed to immediately return any and all originals and copies of materials obtained by it in connection with the improperly issued subpoenas.

**ARGUMENT**

**I. Mr. Persico Has Standing to Challenge the Grand Jury Subpoenas**

As a threshold matter, the government argues that Mr. Persico lacks standing to challenge the subpoenas because they "were not issued to [him] and do not seek material in which he has a privilege or proprietary interest." Govt. Ltr. at 2. The Second Circuit's ruling in In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985 (Simels), 767 F.2d 26, 29-30

1

(2d Cir. 1985), however, forecloses this argument. Simels involved precisely that which is at issue here – a defendant's motion to quash a grand jury subpoena issued to a third party which sought only non-privileged materials relating to the defendant. Id. The defendant there had standing because, as here, the prosecutors were "improper[ly] utiliz[ing] a Grand Jury for the sole or dominating purpose of preparing [his] already pending indictment for trial." Id. at 29.

The cases relied upon by the government, dealing predominantly with subpoenas issued pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure as opposed to grand jury subpoenas, lend its argument no support. United States v. Dupree, No. 19 CR 627 (KAM), 2011 WL 2006295, at *3 (E.D.N.Y. May 23, 2011), for instance, involved Rule 17(c) subpoenas issued to third party institutions by one defendant in a multi-defendant case. Two co-defendants moved to quash the subpoenas, arguing that they did not have a proper purpose. Id. The trial court, while questioning whether the co-defendants had standing to challenge the propriety of subpoenas to third party institutions, nevertheless found it appropriate to address the merits of the motion to quash to ensure that the subpoenas were not improperly used. Id. (citing United States v. Treacy, No. 08 CR 366 (RLC), 2008 WL 5082884 (S.D.N.Y. Dec. 1, 2008) (addressing merits of government's motion to quash Rule 17(c) subpoenas to ensure that they were for a proper purpose)). The court then granted in large part the defendants' motion to quash.

Other cases relied upon by the government are likewise of no avail. Langford v. Chrysler Motor Corp., 513 F.2d 1121, 1126 (2d Cir. 1975), and Kingsway Financial Services, Inc. v. Pricewaterhouse-Coopers LLP, No. 03 CV 5560 (RMB)(HBP), 2008 WL 4452134 (S.D.N.Y. Oct. 2, 2008), dealt with subpoenas duces tecum issued in civil cases. And the subpoenas at issue in United States v. Rajaratnam, No. 09 Cr. 1184 (RJH), 2011 WL 335170 (S.D.N.Y. Feb. 2, 2011); United States v. Tucker, 249 F.R.D. 58 (S.D.N.Y. 2008); and United

States v. Reyes, 162 F.R.D. 468, 470-71 (S.D.N.Y. 1995), like those in Dupree, involved Rule 17(c) subpoenas.

In United States v. Nachamie, 91 F.Supp.2d 552, 559 (S.D.N.Y. 2000), another case cited by the government, the court specifically distinguished grand jury subpoenas from Rule 17(c) subpoenas, finding "sound jurisprudence" in the holding of the court in In re Grand Jury on the issue of standing with respect to grand jury subpoenas:

> [W]e think the government's suggestion that the courts limit standing to claims of abuse of the grand jury process to persons whose property interests or privileges have been invaded is not a viable one…. Third party standing to assert claims of grand jury abuse cannot be determined by categorizing the claimed interest as one of property or privilege, but only by examining the nature of the abuse, and asking whether, and in what manner, it impinges upon the legitimate interests of the party allegedly abused.

619 F.2d 1022, 1026-27 (3d Cir. 1980) (emphasis added).

Thus, the government's "standing" argument is illusory at best. Indeed, the law is clear that where, as here, the prosecution has turned the grand jury into its "private tool," United States v. Fischer, 455 F.2d 1101, 1105 (2d Cir. 1972); is improperly utilizing it "for the sole or dominating purpose of preparing an already pending indictment for trial," Simels, 767 F.2d at 29, and/or has selected the defendant as a "target[] of investigation out of … an intent to harass," United States v. R. Enterprises, 498 U.S. 292, 299 (1991), the "nature of the abuse" gives rise to the defendant's standing to challenge it. See Simels, 767 F.2d at 29-30; In re Grand Jury, 619 F.2d at 1026-27.

## II. The Post-Indictment Subpoenas Are an Abuse of the Grand Jury Process

### A. The Government's Ex Parte Submission Is Unlawful and Its Contents Must Be Disclosed

Rather than candidly offering any "legitimate" purpose in issuing the post-indictment grand jury subpoenas at issue, the government has made an ex parte submission to the Court. But in the words of the Supreme Court, "fairness can rarely be obtained by secret, one sided determination of facts decisive of rights." United States v. Abuhamra, 389 F.3d 309, 322 (2d Cir. 2004) (quoting Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 171 (1951) (Frankfurter, J., concurring)) (emphasis added); see also United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 551 (1950) (Jackson, J., dissenting) ("The plea that evidence of guilt must be secret is abhorrent to free men."). As the Second Circuit observed in Abuhamra, a defendant's ability to counter the government's allegations "'in the forum of public opinion' serves as an important restraint on abuse of government power." 389 F.3d at 323 (quoting In re Oliver, 333 U.S. 257, 270 (1948)) (emphasis added).[1]

Thus, "courts routinely express their disfavor with ex parte proceedings and permit such proceedings only in the rarest of circumstances." United States v. Libby, 429 F.Supp.2d 18, 21 (D.C. Cir. 2006). See United States v. Presser, 828 F.2d 330, 335 (6th Cir. 1987) ("Ex parte proceedings, particularly in criminal cases, are contrary to the most basic concepts of American justice and should not be permitted except possibly in most extraordinary cases involving national security."); Abourezk v. Reagan, 785 F.2d 1043, 1060-61 (D.C. Cir. 1986) ("It is a hallmark of our adversary system that we safeguard party access to evidence tendered in support of a requested court judgment. The openness of judicial proceedings serves

---

[1] As the Court well knows, the government has made repeated misrepresentations regarding Mr. Persico during the pendency of this case, which have been proven to be wrong only through the adversarial process. Thus, the notion that the Court should now faithfully rely on representations it has made in an ex parte submission is patently absurd.

4

to preserve both the appearance and the reality of fairness in the adjudications of United States courts."); see also United States v. Earley, 746 F.2d 412, 416 (8th Cir. 1984) ("An ex parte communication between a trial court and government counsel '[i]n addition to raising questions of due process ... involve[s] a breach of legal and judicial ethics.  Regardless of the propriety of the court's motives in such a case ... the practice should be discouraged since it undermines confidence in the impartiality of the court.'") (quoting 8B J. Moore, Moore's Federal Practice, ¶ 43.03[2], at 43-23 (1983)).

Indeed, "[w]henever the legal rights of individuals are to be adjudicated, the presumption is against the use of secret proceedings." United States v. Taylor, 567 F.2d 1183, 1188 (2d Cir. 1977) (emphasis added); see also American-Arab Anti-Discrimination Committee v. Reno, 70 F.3d 1045, 1070 (9th Cir. 1995) ("Because of the danger of injustice when decisions lack the procedural safeguards that form the core of constitutional due process," the "use of undisclosed information in adjudications should be presumptively unconstitutional.").  Thus, no matter the basis for seeking protection of the information – whether it be a claim of privilege, witness safety or national security – absent "the most extraordinary circumstances," the government may not "seek[ ] to use secret information as a sword against [a criminal defendant]." Id. (emphasis added).

The Second Circuit has remarked on the wrongfulness of ex parte submissions by the government on numerous occasions.  See Abuhamra, 389 F.3d at 323 ("While the Sixth Amendment speaks only of a 'public trial,' the Supreme Court has construed this right expansively to apply to a range of criminal proceedings, including jury selection, suppression hearings, and even pre-indictment probable cause hearings.") (emphasis in original) (citations

omitted). In the context of a defendant's post-conviction bail application, the Second Circuit held:

> <u>Ex parte</u> submissions may generally <u>not</u> be received … because such submissions compromise both a defendant's due process right to a fair hearing and the public's interest in open criminal proceedings. An exception to this rule may be made only in cases in which there is a <u>compelling need</u> to maintain the secrecy of certain evidence, <u>no alternative means of meeting that need</u> exist other than <u>ex parte</u> submission, and the court <u>carefully limits its sealing order only to materials genuinely implicating the compelling need</u>. Even in such rare circumstances, due process permits a court to consider <u>ex parte</u> evidence … only upon <u>substitute disclosure</u> of the substance of the information to the defense and <u>scrupulous review</u> by the court of the reliability of the sealed materials.

<u>Id.</u> at 321 (emphasis added).

Likewise, in <u>Taylor</u>, the Second Circuit held that the government was unjustified in making an <u>ex parte</u> submission despite its assertion that it had done so to protect "the public's interest in grand jury secrecy and thorough grand jury investigations." 567 F.2d at 1186. To be sure, rather than finding the government's interest in grand jury secrecy so "compelling" or "extraordinary" that it justified deprivation of an individual's due process rights to notice and the opportunity for a hearing to refute the government's claims, the Court found the government's interest in secrecy to be "minimal." <u>Id.</u> at 1188.

Here, too, the government has advanced no compelling concern justifying its secret submission. Rather, it summarily claims that an <u>ex parte</u> submission is appropriate because "it discusses the purpose of grand jury subpoenas" and because "disclosing [ ] information [regarding the grand jury investigation to the defendant would reward him for filing [the instant] motion.…" Govt. Ltr. at 3. But, of course, the government could spout such platitudes in virtually every case, thereby improperly ensuring itself perpetual discovery – under

6

the guise of an ongoing or separate investigation – through the eve of, and even during, trial. The Simels decision made clear that the government is not permitted to do so. See 767 F.2d at 29-30.

While thwarting Mr. Persico's ability to fully refute its assertions regarding any legitimate purpose to the subpoenas by filing its submission ex parte, the government simultaneously argues that, "[f]or the reasons set forth in [its ex parte] letter," Mr. Persico "cannot satisfy []his burden" to "show[] that the information sought bears no conceivable relevance to any legitimate object of investigation by the federal grand jury." Govt. Ltr. at 3. Such gamesmanship should be sternly rebuked by the Court. Indeed, the Court should direct that the government's ex parte submission be immediately disclosed to the defense, provide the defense with adequate time to respond, and order the government to delay compliance with the subpoenas and to refrain from issuing any further subpoenas until the Court has decided this application.[2] For "where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other." Abuhamra, 389 F.3d at 322.

### B. The Language and Timing of the Subpoenas Cast Doubt on any Legitimate Purpose

Mr. Persico has been made aware of several post-indictment grand jury subpoenas seeking information directly relating to him that the government served shortly after this Court denied its latest detention application. Given the subpoenas' broad language, commanding production of documents "for the period 1990 to the present" including

---

[2] Although the Court immediately directed the government to respond upon the defendant's filing the motion to quash, the government has taken the position that it is entitled to require compliance with the subpoenas and/or issue additional subpoenas absent a stay from the Court. We respectfully disagree. Indeed, it seems apparent that where, as here, a motion to quash has been made and the Court has ordered a response and argument on the motion, the government should await the Court's decision before continuing with its improper tactics.

>all records, documents, files, and correspondence, including those that are electronically maintained, including but not limited to bills, invoices, statements, payments, checks, agreements, contracts, and loans relating to Michael Persico, Alphonse Persico, Carmine Persico, Theodore Persico, Theodore Persico, Jr., Romantique Limousine and/or any other entities, companies or partnerships related to the above-named individuals

see, e.g., Ex. A (annexed to Motion to Quash), it is staggering that the government could even argue that it is not engaged in a "fishing expedition" "target[ed]" at Mr. Persico. See United States v. R. Enterprises, 498 U.S. 292, 299 (1991). To be sure, the government's own cooperator Anthony Russo was clear in numerous recordings made prior to his cooperation that the government has wrongfully "targeted" Mr. Persico, a "legitimate" businessman.

The conduct of the government agents serving the grand jury subpoenas also makes clear that they were issued to gather evidence against Mr. Persico. In some cases, the agents serving the subpoenas went not to the recipients' current address, but to an old address, clearly signifying that the recipient is not the target of the investigation. In other cases, the agents specifically questioned the subpoena recipient about business dealings with Michael Persico.

Finally, the "timing" of the subpoenas – that is, just a few weeks after the return of a second superseding indictment and shortly before trial in a case that has been pending for more than 18 months – is also indicative of their improper purpose. See Simels, 767 F.2d at 29-30.[3] Thus, in an analogous case in which the government issued a post-indictment grand jury subpoena but maintained that it was served in connection with a separate money laundering investigation, the court directed that the return date of the subpoena await the conclusion of the

---

[3] The government's representation at the August 2011 status conference that discovery was nearly complete was clearly false. Indeed, earlier this week, the government provided thousands of new pages of discovery.

8

defendant's trial.  See United States v. Grant, No. S4 05 CR 1192(NRB), 2008 WL 678553, at *2 (S.D.N.Y.  Mar. 11, 2008).

At bottom, it is evident in this case that the government is not investigating some specific crime it has reason to believe was committed, but rather it is fishing for any scrap of evidence it might use against Mr. Persico at trial.  This, we respectfully submit, cannot be condoned.  Therefore, as the Second Circuit observed in Simels, "if the rule [barring use of the grand jury to gather evidence to prepare for trial on an already pending indictment] is to have any meaning," the subpoenas here must be quashed as an abuse of the grand jury process.  767 F.2d at 29-30.

## CONCLUSION

For the reasons set forth above and in our prior submission, the defendant Michael Persico's motion to quash the post-indictment subpoenas relating to him as an abuse of the grand jury process should be granted.

Dated:     New York, New York
           October 14, 2011

> Respectfully submitted,
> /s/
> Sarita Kedia
> Sarita Kedia Law Offices, P.C.
> 5 East 22nd Street, Suite 7B
> New York, New York  10010
> (212) 681-0202
>
> Paul Shechtman
> Zuckerman Spaeder LLP
> 1540 Broadway, Suite 1604
> New York, NY 10036
> (212) 704-9600

9