UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA

                                                     S4 10 Cr. 147 (SLT)

      -against-

MICHAEL PERSICO, et al.

           *Defendants.*

-------------------------------------------------------------X


**DEFENDANTS' MICHAEL PERSICO, THEODORE PERSICO JR. AND FRANCIS GUERRA'S JOINT MOTION TO COMPEL PRODUCTION OF THE NEW YORK CITY POLICE DEPARTMENT'S HOMICIDE FILE REGARDING THE DEATH OF JOSEPH SCOPO**

Sarita Kedia
Paul Shechtman
*Attorneys for Michael Persico*

Gerald McMahon
Matthew Mari
*Attorneys for Francis Guerra*

Elizabeth Macedonio
James Neville
*Attorneys for Theodore Persico Jr.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES OF AMERICA

        -against-

MICHAEL PERSICO, et al.

        *Defendants.*

-----------------------------------------------------------X

S4 10 Cr. 147 (SLT)

### DEFENDANTS' MICHAEL PERSICO, THEODORE PERSICO JR. AND FRANCIS GUERRA'S JOINT MOTION TO COMPEL PRODUCTION OF THE NEW YORK CITY POLICE DEPARTMENT'S HOMICIDE FILE REGARDING THE DEATH OF JOSEPH SCOPO

### INTRODUCTION

On August 17, 2011, the government superseded the indictment in this case to include, *inter alia*, the October 20, 1993, murder of Joseph Scopo as a predicate act under Count One, which charges several defendants' participation in a racketeering conspiracy. See S2 10 Cr. 147.[1] On August 25, 2011, the government produced a small portion of the homicide file of the New York City Police Department ("NYPD") relating to the murder of Joseph Scopo. See Govt. Disc. Ltr. 25, dated August 25, 2011, at 6-7. The government produced additional documents relating to the homicide just last week. See Govt. Disc. Ltr. 37, dated March 12, 2012, at 2. Specifically, the government produced the autopsy report, certain crime scene unit reports, ballistics reports, latent print reports, property clerk invoices and, most recently, laboratory analyses. The government has refused, however, to provide the remainder of the NYPD's

---

[1] The murder charge is alleged against Michael Persico, Theodore Persico Jr. and Francis Guerra in Racketeering Act Three of the government's most recent superseding indictment. See S4 10 Cr. 147.

1

homicide file, which includes reports of witness statements and other investigative reports that are unquestionably "material to preparing the defense." Fed.R.Crim.P. 16(a)(1)(E).

For the reasons set forth below, the government is required to produce these materials to the defense. Indeed, in this case, not only are the reports of witness statements "material" within Rule 16's definition, they likely constitute <u>Brady</u> material. We therefore respectfully move the Court to compel the government to produce the remainder of the file.

<u>ARGUMENT</u>

I.  THE NYPD HOMICIDE FILE IS "MATERIAL"

   A.  Rule 16's Materiality Standard

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure provides, in relevant part:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings of places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i)   the item is material to preparing the defense;
> (ii)  the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

Fed.R.Crim.P. 16(a)(1)(E).

Evidence is material under Rule 16 if it "could be used to counter the government's case or to bolster a defense." <u>United States v. Stevens</u>, 985 F.2d 1175, 1180 (2d Cir. 1993). In other words, a defendant is entitled "to documents or other items that are material to preparing arguments in response to the prosecution's case-in-chief." <u>United States v. Rigas</u>, 258 F.Supp.2d 299, 306 (S.D.N.Y. 2003) (<u>citing</u> <u>United States v. Armstrong</u>, 517 U.S. 456 (1996)).

2

Although "[m]ateriality means more than that the evidence in question bears some abstract logical relationship to the issues in the case," United States v. Maniktala, 934 F.2d 25, 28 (2d Cir. 1991) (citation omitted), Rule 16's "materiality standard normally is not a heavy burden." United States v. Stein, 488 F.Supp.2d 350, 356-57 (S.D.N.Y. 2007) (quoting United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993)) (emphasis added). "[R]ather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." Stein, 488 F.Supp.2d at 356-57. Moreover, "[a] criminal defendant is entitled to the benefit of the doubt when it comes to material reasonably requested pursuant to Rule 16." United States v. Siegel, No. 96 Cr. 411 (ACS), 1997 WL 12804, *4 (S.D.N.Y. Jan. 14, 1997) (emphasis added).

    **B.    Evidence Adduced at the Trial of John Pappa Demonstrates that the Information Requested Is Material**

In May of 1999, John Pappa was tried and convicted of the 1993 murder of Joseph Scopo. Several witnesses who resided on the street where Scopo was shot (110th Street in Richmond Hill, Queens) were interviewed by the NYPD as to what they had seen and heard on the night of Scopo's death. Some of these witnesses were called by the government to testify at Pappa's trial, and it appears that the witnesses' observations conflict in significant ways with the cooperating witness Anthony Russo's version of the events that transpired.

As an example, according to Federal Bureau of Investigation (FBI) Agent Scott Curtis, who testified at the bail hearing of Francis Guerra, Anthony Russo informs that, on the night of Scopo's homicide, Russo was in a car with John Pappa and John Sparacino. See Transcript of Guerra Bail Proceedings at 45-49, Ex. A. Although in a conversation that was surreptitiously recorded by government cooperator Thomas McLaughlin prior to Russo's arrest

3

and cooperation, Russo had stated that Guerra was in the back seat of his car, Russo now informs that he was the driver of the vehicle, Pappa was in the front passenger seat and Sparacino was in the back seat. Id. According to Russo's most recent tale, Guerra was parked down the block from him in a separate crash car. Id. at 17. He also describes that behind Guerra was Eric Curcio in a third vehicle. Id. at 45-49. Russo claims that, after Pappa got out of the car to shoot Scopo, Russo departed the scene with Sparacino in the back seat and that Guerra then pulled forward and picked up Pappa. Id.[2]

Witnesses at the Pappa trial, however, provided a wholly different account. Dino Basciano, a government cooperating witness, testified that Pappa and Eric Curcio first shot Scopo while Scopo was inside his vehicle and that, when Scopo got out of the car, Pappa and Curcio then went over to Scopo and fired shots at him again. See Excerpted portion of testimony of Dino Basciano, Ex. B. According to Basciano, two other men, Bones and Sparacino – and not Russo – were in the car that Pappa had been in, and they drove away once Pappa had exited the car to fire shots at Scopo. Id. This is completely inconsistent with Russo's present claim that he was driving the car with Pappa and Sparacino in it and that Pappa was the only person who got out of the car, went over to Scopo and shot him.

The government also called an eyewitness Sheila Conticello, who was interviewed by the NYPD the morning after Scopo was killed. She testified that, after hearing sounds like fireworks, she saw someone (fitting Pappa's description) running up the street towards her – in the opposite direction that Russo claims Guerra was positioned – to a car that was double-parked. See Testimony of Sheila Conticello at Pappa Trial, Ex. C. She even shouted

---

[2] Sparacino and Curcio are no longer alive. Therefore, considerable evidence regarding the Scopo homicide is no longer available to the defense.

4

at the person who ran to that car: "[W]hat the heck do you think this is, the damn fourth of July." Id. The car was then driven away. Id.

Likewise, another eyewitness, Michael McQuoid, testified that, after hearing rapid gunfire, he saw from his bedroom window a man leaning over a car firing shots at someone. See Testimony of Michael McQuoid at Pappa Trial, Ex. D. He saw only two cars in the middle of the street – not three as Russo now describes – both of which were situated in the opposite direction of where Russo claims Guerra was positioned. Id. McQuoid saw the man who had been firing shots get into the second car and both cars drove away. Id. The second car, McQuoid stated, was right behind the first, not parked down the block, as Russo asserts. Id.

Indeed, based on the witnesses' information, the government introduced a chart at the Pappa trial showing that a "Dark Colored Car Double Parked on 110th Street [was the] First Car Used in the Scopo Shooting" and that after a "Young Man, 5'7", 160 lbs, With Slender Build In a Dark Hooded Sweatshirt, Fires Shots Killing Scopo" the "First Car Leaves the Scene, the Shooter Runs Up 110th Street; [and a] Second Car Picks Up Shooter and Second Person." See Govt. Chart at Pappa trial, Ex. E.[3]

Undoubtedly, the NYPD homicide file contains reports of these and other witnesses' observations regarding Scopo's shooting. Indeed, we fully expect that the file contains significant information that will bolster our defense that the defendants on trial were not involved in the Scopo murder and that Russo is not being truthful. Accordingly, as the file undeniably "bears more than an abstract logical relationship to the issues in this case in that it directly relates to a[ ] murder that occurred [nearly] 19 years ago, with which defendant[s] ha[ve]

---

[3] According to the government's chart, the witnesses' testimony also showed that it was three people other than the defendants now charged, one of whom (Joseph Monteleone Sr.) is a relative of Eric Curcio, who directed that Scopo be killed. Id.

5

been charged in the indictment [here]," it is "material" under Rule 16. United States v. Messina, No. 11 Cr. 31 (KAM), 2011 WL 3471511, *2 (E.D.N.Y. Aug. 8, 2011) (emphasis added).

## II. The NYPD Homicide File Is Discoverable

Because it can hardly claim that the information sought is not "material," we expect that the government will argue that the file is exempt from disclosure under Federal Rules of Criminal Procedure 16(a)(2). But this argument has repeatedly been rejected by courts in this district. Just recently, in Messina, 2011 WL 3471511, Judge Matsumoto ordered the government to produce the NYPD homicide file concerning a murder with which the defendant Messina was charged as it did not constitute an "internal government document[] made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Id. at *3 (quoting Fed.R.Crim.P. 16(a)(2)). Judge Matsumoto found distinguishable cases in which courts found law enforcement reports to be exempt from discovery because in those cases, unlike in Messina and in this case, the materials sought were prepared as a result of a joint federal-state investigation or the federal prosecution was a "direct outgrowth" of the NYPD investigation. Id. at *3-*4.

In United States v. Carneglia, 256 F.R.D. 384 (E.D.N.Y. 2009), Judge Weinstein not only ordered the government to produce the NYPD's homicide files relating to the murders with which the defendant was charged, but he also found that several portions of the police reports contained in the file were admissible in evidence. Id. at 390-96. Notably, Judge Weinstein permitted the defense to introduce, inter alia, several eyewitness statements contained in the NYPD reports regarding the homicides. Id.

In this case, as in Messina and Carneglia, given that more than 18 years have elapsed since the Scopo homicide and that significant evidence concerning the murder is no

6

longer available to the defense, the information contained in the NYPD's homicide file will most certainly "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." Messina, 2011 WL 3471511, at *3 (quoting Stein, 488 F.Supp.2d at 356-57). Accordingly, the government must be compelled to produce the file.

## CONCLUSION

For the reasons set forth above, the government must be directed to provide to the defense forthwith the NYPD homicide file concerning the death of Joseph Scopo.

Dated:  New York, New York
        March 21, 2012

                                        Respectfully submitted,
                                        /s/
                                        Sarita Kedia
                                        Paul Shechtman
                                        *Attorneys for Michael Persico*

                                        Gerald McMahon
                                        Matthew Mari
                                        *Attorneys for Francis Guerra*

                                        Elizabeth Macedonio
                                        James Neville
                                        *Attorneys for Theodore Persico Jr.*