UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
UNITED STATES OF AMERICA,

    -against-

MICHAEL PERSICO, *et al.*,

              Defendants.

---------------------------------------------------------------- x

**MEMORANDUM AND ORDER**

10-CR-147 (SLT)

**TOWNES, United States District Judge:**

The Fourth Superceding Indictment (the "Indictment") in this case is a twenty-seven count indictment which names nine defendants: Michael J. Persico ("Persico"); his cousin, Theodore Persico, Jr. ("Persico, Jr."); Thomas Petrizzo; Francis Guerra; Anthony Preza; Edward Garofalo, Jr.; his wife, Alicia DiMichele; Louis Romeo and Michael D. Sciaretta. The first six of these defendants are charged with, among other things, engaging in a racketeering conspiracy from January 1987 through June 2011. The government now moves to empanel an anonymous and partially sequestered jury for the trial of this case. For the reason set forth below, that motion is granted.

## BACKGROUND

*The Enterprise*

The Indictment charges that the Colombo organized crime family of La Cosa Nostra (the "Colombo Family") is an "enterprise" within the meaning of 18 U.S.C. § 1961(4). The Colombo Family allegedly operates through several groups of "crews," each with their own hierarchical structure. The crews are headed by captains; there is also a separate hierarchical structure above the captains – a "boss," "underboss," and "consigliere." These three members of the Colombo Family are allegedly "responsible for setting policy, resolving disputes between members and

associates of the Colombo [F]amily and members and associates of other criminal organizations, and approving all significant actions taken by members and associates of the Colombo [F]amily, including murder." Together, the boss, underboss, and consigliere were the family's "administration."

According to the Indictment, "[t]he principal purpose of the Colombo [F]amily was to generate money for its members and associates," which it allegedly achieved "through various criminal activities, including drug trafficking, robbery, extortion, fraud, bribery, embezzlement, illegal gambling, and loansharking." Moreover, Colombo Family members and associates allegedly "furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder."

The indictment also alleges that Colombo Family members and associates used the family's resources "to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the Colombo [F]amily." To this end, Colombo Family members and associates were directed to commit acts of violence, including murder and assault. In addition, Colombo Family members and associates allegedly "engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities." This included a commitment to murdering persons, including other members and associates of organized crime families, thought to be potential witnesses against Colombo Family members and associates.

*Charged Conduct*

Defendants Persico, Jr., Petrizzo, Garofalo, Guerra, Persico and Preza are charged with engaging in a racketeering conspiracy from January 1987 through June 2011, and with other,

2

related offenses. According to the Indictment, Persico, Jr. and Petrizzo were, at various times, soldiers within the crime family, In addition, Persico, Jr. was also at various times a member of the administration, a captain and an associate within the Colombo Family. Garofalo, Jr., Guerra, Persico and Preza were at various times associates within the family.

As part of the racketeering conspiracy, defendants Guerra, Persico, and Persico, Jr. are charged with conspiring to murder and murdering Joseph Scopo. Guerra is charged with conspiring to murder and murdering Michael Devine. Persico, Jr. and Garofalo are charged variously with 1) conspiring to murder John Doe #3; 2) tampering with a witness, Joe Doe #5; and 3) conspiring to use and using extortionate means to steal money from the owner of Columbus Construction. Garofalo is individually charged with attempting to steal money from John Doe #4 by extortionate means and, along with Persico and Persico, Jr., of conspiring to and attempting to use extortionate means to steal money from John Doe #6.

Persico, Jr., along with Persico and Preza is charged with conspiring to make, making, collecting and attempting to collect one or more extortionate extensions of credit from John Doe #8 and John Doe #9. Persico, Jr. is individually charged with embezzling assets of one or more employee welfare benefit plans and employee pension benefit plans. Persico is also charged individually with conspiring to make, extending to and collecting extortionate extensions of credit from John Doe #1 and conspiring to steal, attempting to steal and stealing money by extortionate means from John Doe #10 and John Doe #11. Additionally, he is individually charged with financing, making and collecting one or more extortionate extensions of credit from John Doe #2. He, along with Petrizzo, is charged with conspiring to and attempting to steal money from the owner of Testa Corporation by extortionate means. With Preza, Persico is

charged with conspiring to use and using extortionate means to steal property from John Doe #2. Guerra is individually charged with 1) conspiring to steal and stealing money by extortionate means from John Doe #7; 2) conspiring to steal and stealing money by extortionate means from John Doe #12; 3) conspiring to distribute and distributing the controlled substances oxycodone and oxycontin; and 4) wire fraud.

*The Government's Motion and the Response Thereto*

The government now moves to empanel an anonymous and partially sequestered jury for the trial for this case. Specifically, it requests that "(1) the identities of all prospective jurors, including their names, addresses and places of employment, not be revealed to either the parties or their attorneys; and (2) from the time each juror is empaneled until the conclusion of the trial, the jurors be escorted by representatives for the United Stated Marshals Service to and from the courthouse each day and at all times during recesses" (Government's Motion for an Anonymous and Partially Sequestered Jury ["Government's Memo" at 1]). The factual assertions contained in the Government's Memo are substantiated by an affirmation in support by Federal Bureau of Investigation Special Agent Chance Adam (*See* Affirmation in Support of the Government's Motion for an Anonymous Jury ["Adam Aff."]).

Defendants Persico, Jr., Guerra, Preza and Sciaretta have all filed memoranda of law or letters opposing the empanelment of an anonymous and partially sequestered jury. In his Memorandum of Law in Opposition to the Government's Motion ("Persico, Jr.'s Opp'n"), Persico, Jr., argues that an anonymous jury would unfairly burden the presumption of innocence and impair his ability to conduct a meaningful voir dire and that juror anonymity sends the message to jurors that they need to be protected from the trial defendants (Persico, Jr.'s Opp'n at

1, 3). Defendant Guerra's Memorandum of Law in Opposition to the Motion for an Anonymous and Partially Sequestered Jury ("Guerra's Opp'n") primarily contends that anonymous juries are unconstitutional, but also argues that the facts of this case do not justify an anonymous and partially sequestered jury. He also joins the arguments in the opposition of his co-defendants. (Guerra's Opp'n at 2-8.) In his Affirmation and Memorandum of Law in Opposition to the Government's Motion ("Preza's Opp'n"), Preza argues that the government has failed to adduce evidence sufficient to warrant the drastic remedy it seeks; and less prejudicial alternative procedures are available to address any concerns the Court might have (Preza's Opp'n at 3, 9). In a two-page letter dated March 2, 2012, counsel for Sciaretta argues that none of the five factors relied upon by the courts in deciding whether to empanel an anonymous jury apply to him and requests that his trial be severed from those of his co-defendants if the Court grants the government's motion. Defendants Persico and Petrizzo join in the arguments in opposition to the motion submitted by their co-defendants.

## *DISCUSSION*

### *Legal Standard*

"On resolving motions for anonymous and partially sequestered juries, courts must balance 'the defendant's interest in conducting meaningful voir dire and in maintaining the presumption of innocence against the jury's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict.'" *United States v. Kahn*, 591 F. Supp. 2d 166, 168 (E.D.N.Y. 2008) (quoting *United States v. Quinones*, 511 F.3d 289, 295 (2d Cir. 2007)). The law is clear in this circuit, however, that "when genuinely called for and when properly used, anonymous juries do not infringe a defendant's

constitutional rights." *United States v. Thai*, 29 f.3d 785, 800-01 (2d Cir. 1994) (quoting *United States v. Vario*, 943 F.2d 236, 239 (2d Cir. 1991).

The legal principals governing selection of an anonymous jury are well settled. It is generally appropriate to order selection of an anonymous jury where 1) there is strong reason to believe that the jury needs protection and, 2) reasonable precautions are taken to minimize the effects of such a decision on the defendants and to ensure that their fundamental rights re protected. *Thai*, 29 F.3d at 800; *Vario*, 943 F.2d at 239; *United States v. Thomas*, 757 F.2d 1359, 1365 (2d Cir. 1985). Within these parameters, however, "the decision whether or not to empanel an anonymous jury is left to the district court's discretion." *United States v. Paccione*, 949 F.2d 1182, 1192 (2d Cir. 1991) *see also United States v. Persico*, No. CR–92–00351 (CPS), 1994 WL 150837 at *1 (E.D.N.Y. Apr. 20, 1994).

Courts in this Circuit typically consider the following five factors when determining whether the jury needs the protection of anonymity: "(1) the seriousness of the charges; (2) the dangerousness of the defendant[s]; (3) the defendant[s'] ability to interfere with the judicial process by [themselves] or through [their] associates; (4) previous attempts to interfere with the judicial process by the defendant[s] or [their] associates; and (5) the amount of public and media attention expected during the trial that might expose the jurors to extraordinary pressures that could impair their ability to be fair." *United States v. Cacace*, 321 F. Supp. 2d 532, 534 (E.D.N.Y. 2004); *see Thai*, 29 F.3d at 801; *United States v. Persico*, 621 F.Supp. 842, 878 (S.D.N.Y. 1985). In making this evaluation, the Court can rely on the government's proffer of facts showing that the jury needs protection. *See United States v. Wong*, 40 F. 3d 1347, 1376-77 (2d Cir. 1994).

## *The Factor Analysis*

With respect to the first of the five factors set forth above, the superseding indictment alleges that most of the defendants who will be tried by this jury are members or associates of the Colombo Family and charges the defendants with crimes of violence, *inter alia*, racketeering conspiracy, extortion and/or extortion conspiracy. The predicate acts of the racketeering charge include, in addition to extortion and extortion conspiracies, conspiring to murder three individuals and carrying out the actual murder of two of them. Persico, Jr. and Thomas Petrizzo are inducted members of the Colombo Family. Indeed, Persico, Jr. is a high-ranking captain in the family. Garofalo, Jr., Guerra, Persico and Preza are associates within the family. The seriousness of the charges is a factor in this case that weighs in favor of an anonymous jury.

With respect to the second factor, the Court finds ample evidence that the defendants are dangerous. Their "involvement with and leadership of a criminal organization indicates [their] propensity for violence." *Khan*, 591 F. Supp. 2d at 170-71. The government's affidavit indicates that Persico, Jr., in addition to being a high-ranking captain, is also nephew of Carmine Persico, the official boss of the Colombo Family. Persico, though an associate, is the son of Carmine Persico and the brother of Alphonse Persico, who was one time expected to become the acting boss of the crime family. The affirmation of special Agent Adam describes Persico as having a powerful position within the crime family. That representation is supported for the Court by a recording relied upon by the government in Persico's bail hearing. In it, Persico, Jr. is heard to complain that he sought and was denied permission from Persico to immediately commit an act of violence against an individual who was not timely repaying an alleged extortionate extension of credit.

With respect to the third factor, this Court will take judicial notice of cases documenting the Colombo Family's previous attempts to interfere with the judicial process. For example, in 1985, Judge Keenan found "reason to believe" that Carmine and Alphonse Persico and other members of the Colombo Family "would be willing to use improper and unlawful influence to obstruct the proceedings." *United States v. Persico*, 621 F.Supp. 842, 878 (S.D.N.Y. 1985), *aff'd in relevant part*, 832 F.2d 705, 717 (2d Cir. 1987). Judge Keenan stated:

> In racketeering acts 36 through 46, seven of the defendants are charged, in one respect or another, with bribery of public officials, including a Special Agent of the Internal Revenue Service and an official of the Bureau of Prisons at the Federal Correctional Institution in Ashland, Kentucky. These various bribery schemes, allegedly undertaken with Colombo [F]amily crime money for the purpose of benefiting [*sic*] Family members, have involved attempts to prevent the commencement of various state and federal criminal prosecutions, to procure the issuance of false writs in the name of a United States District Court, to initiate or prevent the transfer of defendant Carmine Persico to or from federal prison in New York City, and to procure for him other unwarranted benefits, and to unlawfully influence the disposition of Carmine Persico's application to vacate his sentence through the presentation of false and fraudulent evidence to a United States District Judge.

621 F.Supp. at 878-79. At the time Judge Keenan wrote his opinion, "[t]he allegations contained in several of these racketeering acts [had] already been the subject of guilty pleas . . . by four of the defendants." *Id.* at 879. This Court notes that, at a subsequent trial, "Carmine and Alphonse Persico were convicted of paying an illegal gratuity to a federal prison official, and the Persicos and [a co-defendant] also were convicted of offering to pay a bribe to a federal official." 832 F.2d at 709.

In light of these and other "well-known instances of attempts by the Colombo Family to influence improperly the judicial system," courts have found that there is a risk of interference

with the judicial process in cases involving high-ranking members of the Colombo Family. *See United States v. Persico*, No. 04-CR-911 (SJ), 2006 WL 1794773, at *2 (E.D.N.Y. June 9, 2006). As the Second Circuit has stated, "it [is] certainly reasonable to expect" that such members have "the means to interfere with . . . jurors" if they wish to do so. *United States v. Amuso*, 21 F.3d 1251, 1264-65 (2d Cir. 1994).

As noted above, one of the defendants – Persico, Jr. – is himself a high-ranking captain in the Colombo Family. Adam Aff. at 2. Another defendant – Persico – is the son of Carmine Persico, the official boss of the Colombo Family, and the brother of Alphonse Theodore, who was reportedly slated to succeed his father as acting head of the family. *Id.* at 3. In addition, the government has adduced evidence that two other defendants – Garofalo and Guerra – are influential within the Colombo Family and, therefore, have the ability to influence members to commit crimes on their behalf. *Id.* at 10-11. Accordingly, this Court finds that the defendants have the ability to interfere with the judicial process by themselves or through associates.

With respect to the fourth factor, there is evidence of previous attempts to interfere with the judicial process by defendants in this case. According to Special Agent Adam, Persico, Jr., and Garofalo engaged in witness tampering by intimidating and threatening one of the alleged victims in this case, John Doe #5, in an effort to prevent him from reporting them to law enforcement. *Id.* at 6. A private investigator hired by another defendant, Guerra, falsely told another alleged victim, John Doe #12, that Guerra was not in custody, prompting the victim to fear for his safety and to assert his Fifth Amendment privilege when contacted by the government. *Id.* at 10. In addition, in another case, a private investigator representing Persico,

9

Jr., contacted an alleged extortion victim and asked the victim to sign a false affidavit, exculpating Persico, Jr., and the other defendants in that case. *Id.* at 9.

Another court in this district has held that "to support a finding that an anonymous jury is warranted, obstruction of justice charges need not relate to prior jury tampering efforts, but instead may relate solely to efforts to tamper with witnesses...." *United States v. Prado*, No. 10-CR-74, 2011 WL 3472509, at *3 (E.D.N.Y. Aug. 5, 2011). Consequently, "[a] court...may appropriately consider a defendant's propensity to threaten witnesses or otherwise to tamper with the judicial process in evaluating the need for an anonymous jury." *Quinones*, 511 F. 3d at 296 n.6; *see also United States v. Aulicino*, 44 F.3d 1102, 1116-17 (2d Cir. 1995) (upholding use of anonymous jury where defendants attempted to tamper with witnesses); *see also United States v. Blackshear*, 313 F. App'x 338, 343 (2d Cir. 2008) (finding that "[i]t does not seem unreasonable to infer that jurors might also be threatened" by defendant previously found to intimidate potential witnesses); *Prado*, 2011 WL 3472509, at *2 (granting motion for anonymous and partially sequestered jury "in light of the defendants' and their associates' alleged history of witness tampering and related offenses, combined with their alleged membership in a large-scale, violent gang with numerous members still at liberty - who have both the means and a demonstrated willingness to obstruct justice").

Finally, with respect to the fifth factor, this trial is expected to draw a considerable amount of public and media attention. Several articles relating to this case have already appeared in both the *New York Post* and the *New York Daily News*. *See* Government's Motion for an Anonymous and Partially Sequestered Jury at 22-23 (citing articles). This is hardly surprising, since this case involves close relatives of the reputed boss of the Colombo Family and two

murders. In light of the "the public fascination with organized crime cases," *Persico*, 2006 WL 1794773, at *2, there is every reason to expect extensive media coverage of the trial that "might expose the jurors to extraordinary pressures that could impair their ability to be fair." *See Cacece*, 321 F. Supp. 2d at 534.

For the reasons stated above, this Court finds strong reasons to believe that the jury needs protection. This Court further finds that the measures proposed by the prosecution are reasonable under the totality of the circumstances in this case. While the defendants' will not learn the prospective jurors' names, exact addresses and employers' names and addresses, this will not compromise the defendants' ability to engage in a meaningful *voir dire* of the venirepersons. *See United States v. Locascio*, 357 F. Supp. 2d 558, 564 (E.D.N.Y. 2005) (noting that "even in a regular jury selection, the jurors are not called upon to divulge their address or the name and address of their employer"). This Court will still engage in extensive *voir dire* regarding such matters as the prospective jurors' "familiarity with the case, the defendants and the crime scenes, . . . [the prospective jurors'] neighborhoods, marital status, employment, spouse's and children's employment, education, organizational affiliations, ethnicity, military service," and whatever other matters counsel may propose. *See United States v. Wong*, 40 F.3d 1347, 1377 (2d Cir. 1994). In addition, this Court will take steps to minimize any prejudicial effects on defendants' ability to maintain the presumption of innocence by giving the jurors "a plausible and nonprejudicial reason for not disclosing their identities [and] . . . for taking other security measures." *See United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994).[1]

---

[1] "Jurors are generally told that such steps are not unusual and are taken to ensure their privacy and impartiality in light of the media and public attention the trial is expected to receive." *United States v. Galestro*, No. 06-CR-285 (ARR), 2008 WL 2783359, at *3, n. 3 (E.D.N.Y. July

Finally, because "the same reasons that warrant the use of an anonymous jury also warrant partial sequestration of the jury," *Prado*, 2011 WL 3472509, at *11, the court will partially sequester the jury. Specifically, the Court will direct the United States Marshals Service to escort empaneled jurors between the Courthouse and a central undisclosed location each day and at all times during recesses. *See, e.g., Paccione*, 949 F.2d at 1191 (affirming district court's partial sequestration of jurors by "having the jurors transported at the end of each trial day to an undisclosed central location from which they could go home"); *United States v. Antico*, No. 08-CR-559, 2010 WL 2545877, at *5 (E.D.N.Y. June 11, 2010) (ordering that anonymous jury be picked up and dropped off by the United States Marshals at an undisclosed location before and after trial each day).

---

15, 2008) (citing *United States v. Gammarano*, No. CR-06-0072 (CPS), 2007 WL 2077735, at *6 (E.D.N.Y. July 18, 2007); *United States v. Urso*, No. 03-CR-1382 (NGG), 2006 WL 1210886, at *1 (E.D.N.Y. May 2, 2006)). If the parties wish to propose another plausible, nonprejudicial explanation, they may do so at any time prior to the start of trial.

## *CONCLUSION*

For the reasons stated above, the government's motion to empanel an anonymous, fully escorted and partially sequestered jury for the trial of defendants is granted. The government is reminded that it is to submit a proposed jury questionnaire on or before May 1, 2012. The defendants are to submit any proposed additions or objections by May 4, 2012. The Juror Return date to complete the questionnaire is May 23, 2012.

**SO ORDERED.**

/s/ Sandra L. Townes
SANDRA L. TOWNES
United States District Judge

Dated: April 6, 2012
Brooklyn, New York