UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA

   -v.-                                                               10 CR 147 (S-4) (SLT)

**FRANCIS GUERRA**, *et al.*,

                                       *Defendants*.
-------------------------------------------------------------------X


# MICHAEL PERSICO'S OPPOSITION TO THE GOVERNMENT'S SECOND MOTION *IN LIMINE*


Sarita Kedia
Sarita Kedia Law Offices, P.C.
5 East 22nd Street, Suite 7B
New York, New York 10010
(212) 681-0202

Paul Shechtman
Zuckerman Spaeder LLP
1185 Avenue of the Americas
New York, NY 10036
(212) 704-9600

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA

      -v.-                                                   10 CR 147 (S-4) (SLT)

FRANCIS GUERRA, *et al.*,

                                   *Defendants*.
-------------------------------------------------------------------X

## MICHAEL PERSICO'S OPPOSITION TO THE GOVERNMENT'S SECOND MOTION *IN LIMINE*

       The government moves to admit a batch of hearsay statements attributed to 95-year-old John "Sonny" Franzese, an avowed "hoodlum" for "life,"[1] from conversations recorded March 8, 2006, Dec. 4, 2006, Jan. 11, 2007 and Jan. 16, 2007. According to the government, the statements are admissible on three separate grounds: (1) as declarations of a coconspirator under Fed. R. Evid. 801(d)(2)(E), (2) to contextualize parts of the Jan. 16, 2007 conversation involving defendant Michael Persico and (3) as declarations against interest under Rule 804(b)(3). The government is plainly wrong on all scores.

## ARGUMENT

### THE PROFFERED STATEMENTS SHOULD BE EXCLUDED FROM EVIDENCE AT TRIAL

**I.    THE STATEMENTS ARE INADMISSIBLE AS COCONSPIRATOR DECLARATIONS**

       The government touts the statements as "quintessential, admissible coconspirator" declarations, but offers only this by way of explanation: they find Franzese, "in order to further the criminal enterprise and the Colombo family racketeering conspiracy – the enterprise alleged in the

---

[1]    12/4/06 Tr. 5:7.

indictment ... – ... educating [cooperating witness Gaetano 'Guy' Fatato] on the ... family's operations as well as [its] structure and the importance of [] Persico to the ... family." Mem. 6-7.

To satisfy Rule 801(d)(2)(E)'s demands, however, the statements must advance a *specific criminal conspiracy* that includes both the declarant (Franzese) and the defendant (Persico). *See U.S. v. Gigante*, 166 F.3d 75, 82-83 (2d Cir. 1999); *U.S. v. Russo*, 302 F.3d 37, 44-47 (2d Cir. 2002); *U.S. v. Coppola*, 671 F.3d 220, 246-47 (2d Cir. 2012). A general conspiracy to associate with the mafia, as the government posits here, does not suffice. *Ibid.*

Indeed, Judge Glasser recently rejected a virtually identical government argument, excluding purported coconspirator statements said to further "the Genovese crime family conspiracy in that they were made to apprise [cooperating witness Michael] D'Urso of the [conspiracy's] status" and "enlighten him as to the structure of the Genovese family." *U.S. v. Romanello*, No. 10 CR 929 (S-1) (ILG), 2012 WL 27284, at *5 (E.D.N.Y. Jan. 4, 2012) (citation omitted); *compare* Mem. 4 (Franzese attributions "admissible co-conspirator statements because ... made ... to further the Colombo enterprise"). Finding no "specific criminal conspiracy to do any criminal act between Romanello, the defendant, and Cafaro, the de[c]larant" – only a claim that the two were "members of a conspiracy, namely the Genovese organized crime family" – Judge Glasser held the statements inadmissible under Rule 801(d)(2)(E) as glossed in *Gigante* and *Russo*. *Id.* at *7-*8 (citation, footnote and internal quotes omitted). Remarkably, the government does not even bother to cite those controlling precedents, much less discuss or attempt to engage them.

Far from being "quintessential, admissible coconspirator" declarations,[2] Franzese's proffered statements reduce to pure narrative hearsay or "idle chatter," *e.g., U.S. v. Lieberman*, 637

---
[2] Mem. 6.

2

F.2d 95, 103 (2d Cir. 1980); *U.S. v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994); *Romanello*, 2012 WL 27284, at *1, concerning "various" people whom the government labels "members" and affiliates of the Colombo "Crime Family." *Id.* It follows that the proffered statements – like those excluded in *Romanello* – furthered no "specific" predicate "conspiracy" identified by the government. *Id.* at *7.[3] Rather, by the government's own account, the statements tended to advance only the general "Colombo family racketeering conspiracy ... alleged in the indictment" (Mem. 6-7) – an insufficient basis for admission under Rule 801(d)(2)(E). As in *Romanello*, then, the statements do not qualify as coconspirator declarations and cannot come in as such. *See also, e.g., U.S. v. Olivieri*, 740 F. Supp. 2d 414, 421 (S.D.N.Y. 2010) (Marrero, J.) (excluding "intercepted" remarks, offered as coconspirator statements, exchanged between reputed mobsters). As Judge Glasser aptly put it, a "conspiracy in the air, so to speak, will not do." *Romanello*, 2012 WL 27284, at *6.

The one conceivable exception to this conclusion – though the Court would not know it from the government's proffer – involves Parts I-III of the Jan. 16, 2007, conversation. Those portions of the conversation, in the government's telling, alternately centered on Fatato's "assistance in settling" a "dispute between Persico's brother-in-law and others at the Garden City Hotel that arose after [the] brother-in-law was accused of stealing money," and/or the "handling [of] a problem that arose at a Colombo-controlled entity, the Garden City Hotel." Mem. 4-6.

---

[3] At one point in its memo, the government seems to imply the existence of a specific criminal conspiracy between Franzese as speaker and Persico as defendant, describing Franzese as "advis[ing]" Fatato in the Dec. 4, 2006, conversation that he "became close with *the Persicos* when he assisted *them* by destroying evidence." Mem. 4 (emphasis supplied). In the first place, this *post hoc* remark to a non-participant does nothing to further the putative evidence tampering conspiracy recounted by Franzese. More pointedly, though, the government significantly mischaracterizes the comment's thrust. As the transcript makes clear, Franzese actually told Fatato that he had ripped up a car for Michael Persico's father *Carmine* and his uncle *Alphonse* Persico decades earlier, during the reign of Joe Profaci, 12/4/06 Tr. 4:11-5:16 – before Michael Persico was even born or when he was just a little boy. *See* http://en.wikipedia.org/wiki/Joe_Profaci *(as visited 5/29/12).* We trust the government's reference to "the Persicos" is an imprecise use of shorthand rather than an intentional effort to mislead.

In fact, the transcript finds a wired Fatato straining to inject himself into a *pending civil suit* between the brother-in-law and the hotel's principal – one with myriad claims and counterclaims flying back and forth – springing from the brother-in-law's termination as a hotel employee in light of his alleged theft.  *See, e.g.,* 1/16/07 Pt. I Tr. 17, 20-21, 23, 25.  As the transcript reflects, Fatato largely instigated discussion of the pending law suit, practically begging to leap in and try to help negotiate an out of court settlement.  Regardless, the point is this: there is nothing illegal about litigation between third parties – *not* Persico – or attempting to resolve it informally,[4] so the suit and prospective settlement efforts cannot serve as specific predicate conspiracies anchoring an 801(d)(2)(E) admissibility determination.  And to the extent the government suggests the suit stemmed from underlying criminal activity – the brother-in-law's purported theft from the hotel, possibly at the owner's direction (Mem. 4) – there is no indication that Franzese or Persico had anything to do with it, likewise eliminating that as a potential predicate conspiracy.

Finally, even assuming Rule 801(d)(2)(E)'s overall application – and the government wholly fails to establish it – Parts I-III of the Jan. 16, 2007, conversation, in particular, contain innumerable instances of hearsay-within-hearsay.  Extra-judicial statements ascribed to persons not present or privy to the conversation – including an attorney, Persico's brother-in-law and the hotel's principal – thus riddle the transcript.  The government makes no effort to allege, let alone prove, that these absent declarants belonged to any conspiracy at all – never mind a conspiracy jointly involving Franzese and Persico.  And it proposes no other way around the hearsay-within-hearsay problem.

---

[4]  *Cf., e.g., Shearson/AmEx, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983), *superseded by statute on other grounds*; 9 U.S.C. §§ 1 *et seq.*

4

For these reasons, Franzese's proffered statements are inadmissible under Rule 801(d)(2)(E) as coconspirator declarations.

## II. THE STATEMENTS ARE INADMISSIBLE AS CONTEXT

The government passingly asserts, in three unelaborated sentences, that "Franzese's statements" also provide admissible "context" for the parts of the Jan. 16, 2007, conversation involving Persico. Mem. 7; *see also id.* 4 (statements "necessary" to "place in context a recorded conversation among" Fatato, "Franzese and Persico"); *id.* (similar). But that contention presumes the Jan. 16 conversation with Persico is admissible in its own right. It is not.

To the contrary, the government articulates no theory of relevance or proper 404(b) purpose for the aforementioned law suit or prospective efforts to settle it out of court – the prime focus of the main Jan. 16 conversation. And we see no cognizable basis for eliciting the suit – again, involving third parties rather than Persico – or the proposed settlement attempts, neither being charged as racketeering acts or substantive counts against Persico or any other defendant. Alternatively, any residual probative value surrounding the suit and bid to resolve it pales against the confusion, delay and waste of time that would attend a mintrial on its competing claims of wrongdoing – accusations entirely incidental to the indictment's allegations. *See, e.g., U.S. v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984); *U.S. v. Pascarella*, 84 F.3d 61, 70 (2d Cir. 1996); *Ricketts v. City of Hartford*, 74 F.3d 1397, 1413-14 (2d Cir. 1996); Fed. R. Evid. 403. Though the government continues to conflate the concepts of hearsay and relevance[5] – this time implicitly – the fact that Persico's attributions constitute party opponent admissions merely gets them around Rule 802's ban on hearsay. It does not make them relevant or admissible under rules 401-04, as the government incorrectly appears to assume.

---

[5] *See* Def. M. Persico's Opp. to Admission of Other Acts Evidence, Dkt. No. 486, at 9 (5/25/12).

5

In any event, the attributions in the main Jan. 16 conversation are uncoded, clear on their face and speak for themselves. They therefore need no additional context. And even if they did, unrelated conversations occurring up to 10 months earlier – not to mention Franzese's subsequent disquisitions on mob history and values, professions of devotion to Persico's forebears, and veiled insinuations about his behind-the-scenes role in organized crime – would hardly supply it. *See* Mem. 4-5. Try as it might, the government cannot bootstrap the admission of flagrant narrative hearsay by peddling it as "context" for an equally inadmissible predicate conversation that is clear as a bell.

Finally, even if context were necessary – and it isn't – the government is free to elicit it in the usual manner: by calling cooperator Fatato to the witness stand and exposing him to the rigors of cross-examination. The government obviously wants it both ways, ducking full-throttled impeachment while smuggling Fatato's untested allegations on tape – self-serving, prejudicial and otherwise inadmissible – into the record through the backdoor. Unfortunately for the government, the rules of evidence forbid that gambit in the circumstances at hand.

In sum, the government's context argument is fanciful and should be swiftly rejected.

## III. THE STATEMENTS ARE INADMISSIBLE AS DECLARATIONS AGAINST INTEREST

The government's next argument for admissibility – that "Franzese's statements" constitute declarations "against interest made to a cooperating witness," *id.* 7 – fares no better.

**First**, though the BOP Web site confirms that Franzese is in federal custody, the government fails to allege or establish that he is unavailable to testify – a prerequisite for admission under Rule 804(b)(3). *See, e.g., U.S. v. Abreu*, 342 F.3d 183, 190 (2d Cir. 2003) (affirming exclusion on this ground).

6

**Second**, beyond baldly promising to "provide substantial corroboration" at trial (Mem. 9-10), the government makes no attempt to carry its threshold burden, as proponent, of proffering "corroborating circumstances that clearly indicate [the] trustworthiness"[6] of both speaker (Franzese) and statements. *See*, *e.g.*, *U.S. v. Paulino*, 445 F.3d 211, 219-20 (2d Cir. 2006); *Abreu*, 342 F.3d at 190; *U.S. v. Jackson*, 335 F.3d 170, 179 (2d Cir. 2003); *U.S. v. Lumpkin*, 192 F.3d 280, 286-87 (2d Cir. 1999); *U.S. v. Doyle*, 130 F.3d 523, 542-44 (2d Cir. 1997) (all affirming exclusion on this ground). If anything, the tapes appear to capture an aging gangster posturing and blustering, mostly about ancient mob lore, to impress and ingratiate himself with much younger men – the epitome of *un*reliability. In short, the government offers no reason to credit the unexamined grandstanding of a 95-year "hoodlum" – description Franzese's – whom it has previously accused or convicted of scores of heinous crimes. 12/4/06 Tr. 5:7.

**Third**, because "non-self-inculpatory statements" within "broader" self-inculpatory "narrative[s]" are inadmissible as declarations against interest, *Williamson v. U.S.*, 512 U.S. 594, 600-01 (1994), "each particular hearsay statement offered under Rule 804(b)(3) must be separately parsed" to determine whether it primarily incriminates the speaker or predominantly implicates others. *Jackson*, 335 F.3d at 179 (citing *U.S. v. Tropeano*, 252 F.3d 653, 658 (2d Cir. 2001); *U.S. v. Sasso*, 59 F.3d 341, 349 (2d Cir. 1995)). Defying this directive, the government indiscriminately proffers 42 full transcript pages in blunderbuss fashion and inappropriately leaves the parsing to defense counsel and the Court – despite bearing the burden of demonstrating admissibility in the first instance. Though we decline to take on the government's responsibility, many of the proffered statements – *e.g.*, "'between me and you, he [Persico] don't have to be a

---

[6] Fed. R. Evid. 804(b)(3)(B).

goodfella. He's doing a different kind of work[,]'" Mem. 5 – facially purport to implicate third parties rather than Franzese himself, compelling exclusion under *Williamson* and associated cases.

**Fourth**, the bulk of Franzese's attributions – offered to show that he was "underboss of a crime family" and "privy to the inner-workings of the racketeering enterprise," *id.* 8 – do not amount to declarations against interest because they are not self-inculpatory as a matter of law. Once again, Judge Glasser's *Romanello* opinion – rejecting a similar government proffer and excluding statements alternately tendered under Rule 804(b)(3) – illustrates the point. As the court explained there, mere professions of mafia affiliation are insufficiently incriminating to overcome the rule's constraints:

> [T]he government regards "Cafaro's statements to D'Urso regarding his intimate knowledge of the structure and hierarchy of the Genovese Crime Family and the particular illegal activities in which certain members are involved as against his penal interest." **There is no section in Title 18 of the United States Code of which I am aware which is offended by mere knowledge**. The government does not allege that Cafaro was a member of the Genovese family, but **even if he were,** "**mere membership in an organized crime family is not a RICO offense**," *U.S. v. Bonanno Org. Crime Fam.*, 683 F. Supp. 1411, 1429 (E.D.N.Y. 1988), **or any other crime**, *Rastello v. Warden, MCC*, 622 F. Supp. 1387 (S.D.N.Y. 1985)....
>
> I am not aware of any section in Title 18 of the United States Code which makes mere membership in such an organization a crime. **There is thus no basis to posit a reasonable person's belief that statements such as those made by Cafaro would subject him to criminal liability**. The government's confidently asserted contention that "Cafaro's statements to D'Urso regarding his intimate knowledge of the structure and hierarchy of the Genovese crime family and the particular illegal activities in which certain members are involved are plainly statements against Cafaro's penal interest" is "plainly" an *ipse dixit*. That "intimate knowledge" is not vouchsafed by the likes of Cafaro, but is comprehensively retold in the first eleven paragraphs of this indictment and by knowledgeable witnesses in countless cases in which organized crime families went on trial.

2012 WL 27284, at *5-*6 (some citations omitted) (emphasis supplied).  So too here, thwarting the government's bid to admit Franzese's statements under Rule 804(b)(3).

## IV. THE STATEMENTS ARE INADMISSIBLE UNDER RULE 403

Even assuming an applicable hearsay exception, the statements fail Rule 403 scrutiny insofar as offered to establish the "Colombo family hierarchy," "operations" and "structure." Mem. 6-7.  As Judge Glasser soundly observed on parallel facts:

> Th[e proffered] excerpts can add nothing to the first 12 paragraphs of the indictment which, in lucid detail describe the "enterprise" alleged to be the "Genovese organized crime family of La Cosa Nostra" and the five organized crime families embraced by that term.  The structure of the Genovese family, its hierarchy, its administration, the prerequisites of membership and the means and methods of the enterprise are fully described and will be read to the jury.  **The probative value, if any, of those excerpts, is questionable[ and t]hey would needlessly consume time**....

*Romanello*, 2012 WL 27284, at *5 (emphasis supplied).

Compounding the needless time consumption, Franzese and Fatato would be subject to impeachment as nontestifying hearsay declarants if the Court grants the government's motion and admits the proffered statements.  *See* Fed. R. Evid. 806.  Since the § 3500 material for each is voluminous – comprising thousands of pages of documents and hundreds of hours of recordings for Fatato, and spanning several decades for Franzese – the impeachment will be extensive and a minitrial inevitable.  To make matters worse, the government turned over thousands of pages of Fatato § 3500 documents just this week while withholding his recordings entirely[7] and producing nothing for Franzese.  Because of this belated and incomplete disclosure, in the event the Court

---

[7] The prosecutors' refusal to produce the tapes, claiming the Jencks Act doesn't require them to, is incongruous considering they divulged "copies of [Fatato's] prior testimony in other cases and ... FBI reports relating to his cooperation and the information he has provided" – items also covered by § 3500.  *See* Govt. 5/28/12 Ltr., Dkt. No. 492, at 12.

9

admits the statements the government seeks to introduce, a significant continuance will be necessary to absorb the mountain of information on the two men once we finally receive it all. Simply put, the game isn't worth the candle.

## **CONCLUSION**

For the reasons given, the Court should exclude Franzese's proffered statements as inadmissible hearsay.

Respectfully submitted,

/s/

Sarita Kedia
Sarita Kedia Law Offices, P.C.
5 East 22nd Street, Suite 7B
New York, New York 10010
(212) 681-0202

Paul Shechtman
Zuckerman Spaeder LLP
1185 Avenue of the Americas, 31st Floor
New York, NY 10036
(212) 704-9600

*Attorneys for Michael Persico*