**ZUCKERMAN SPAEDER LLP**

1185 AVENUE OF THE AMERICAS   31ST FLOOR
NEW YORK, NY 10036-2603
212.704.9600   212.704.4256 fax   www.zuckerman.com

PAUL SHECHTMAN
Partner
212-704-9600
Pshechtman@zuckerman.com

June 3, 2012

Honorable Sandra L. Townes
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   United States v. Michael Persico, 10 Cr. 147 (SLT)

Dear Judge Townes:

At Friday's court appearance, the Court reserved decision on whether the government could offer evidence under Fed. Rule Evid. 404(b) of the supposed conspiracy to kill Bruce Black. See Govt. Motion in Limine Doc. 451 at 21. According to the government, Ken Geller, a corrupt accountant, would testify (i) that he and others had invested money with Black; (ii) that to protect the investments, he had taken out a $2 million "key man" life insurance on Black; (iii) that the investments had failed, causing Geller and the others to lose their money; and (iv) that in the summer of 1989, Geller "explained the situation to [Michael] Persico in an effort to solicit Persico's assistance in having Black killed so that [Geller] could collect the life insurance proceeds," and Persico agreed to the plan. Id. The murder, however, never materialized. Supposedly, Geller "decided against [it] and accordingly he and Persico called it off." Id.



Honorable Sandra L. Townes
June 3, 2012
Page 2

In revisiting this issue, the Court should consider these additional facts:

1. There is no evidence that the alleged murder conspiracy had any relationship to the Colombo Crime Family. First, Geller's investors were legitimate businessmen; the investments were not organized-crime related. See FBI 302 Report dated 10/1/90, Ex. A. Second, the purpose of the supposed plot was to benefit Geller -- to obtain $2 million for him -- and not to advance the interests of the Colombo Family. And third, by Geller's own account, Persico never indicated that Colombo Family members would be involved in the killing. Rather, Persico allegedly said that "he would 'give the money to this guy who would give it to this guy' who would perform the killing." See Ex. B. Absent a meaningful link to the Colombo Family, the evidence has little, if any, value. See United States v. Murray, 103 F.3d 310, 317 (3d Cir. 1997)(Alito, J.)(absence of evidence that uncharged murder was related to the enterprise "dooms the government's argument[s] for admissibility").[1]

2. If the government were permitted to introduce evidence of the supposed conspiracy to murder Black, the defense would offer evidence that Geller was involved in a separate plot to murder Black that had nothing to do with Mr. Persico. That plot is documented

---

[1] On October 1, 1990, a few weeks after he began cooperating, Geller explained to the FBI the complex investments he and others had with Black, who was then under indictment, and the losses incurred. Id. When the FBI asked him if Michael Persico was involved in a scheme relating to Black, Geller denied such involvement. See Ex. A. Geller recalled only that "Bruce Black may have at one time met Michael Persico because he recalled Persico telling him [Geller] to stay away from Black because the guy's trouble." Id. Notably, it was only days later that Geller first told the FBI about Mr. Persico's supposed involvement in the Black murder plot. See Ex. B.



Honorable Sandra L. Townes
June 3, 2012
Page 3

in an FBI 302 Report dated November 15, 1990. <u>See</u> Ex. C. According to the report, on November 14, 1990, Lou Mina, an investor having no relationship to Michael Persico, visited Geller in his office and discussed a plan to "hav[e] Black killed [and] collect[] . . . Black's $2,000,000 life insurance policy." <u>Id.</u> The killing "would take place inside MCC [where Black was then incarcerated] and [would be] made to look like an accident." <u>Id.</u> A former police officer was a central participant, and the price was $200,000. <u>See</u> also FBI 302 Report dated 11/19/90, Ex. D. In short, if proof of a Persico-Geller murder conspiracy is allowed, proof of the Mina-Geller plot is sure to follow (since in our view, the former is a fiction while the latter was not), creating a confusing sideshow and sending the trial off track. <u>See</u> <u>United States v. Perkins</u>, 937 F.2d 1397, 1401 (9th Cir. 1991)("[t]he district court did not abuse its discretion in focusing the trial on the offense at issue, and not allowing the parties to stray and discuss the details of several extraneous [crimes]").[2]

      3.    As we receive more discovery material, it is increasingly clear that the alleged Persico-Geller murder conspiracy is indeed a fiction. In telling the story to the FBI in 1990, Geller said that Mr. Persico originally agreed to do the job for $800,000, then for $400,000 ($200,000 up front and $200,000 after Black was killed), and then for $100,000 of which $50,000 would be the discharge of a prior indebtedness. <u>See</u> Ex. B ("[s]ince Persico already owed Geller $50,000 for either payment of taxes to the IRS or monies lent for his [Persico's]

---

[2] We believe that Geller created the fictitious Persico-Geller plot using raw material from the actual Mina-Geller plot.



Honorable Sandra L. Townes
June 3, 2012
Page 4

father, Persico said 'give me $50,000, and I'll do it'"). Most recently, the government has provided a Brady disclosure in which it states that although "in 1990, the FBI reported that Geller paid approximately $200,000 to Michael Persico as part of their conspiracy to kill Bruce Black . . . he [Geller] does not [now] recall making payment to Michael Persico for this purpose." See Govt. letter 6/1/12 at 3, Ex. E. That disclosure is extraordinary: if Geller paid Mr. Persico to commit a murder (whether the sum was $50,000 as referenced in the 1990 FBI report or $200,000 as referenced in the Brady letter), one would think that he would recall it.

        4.     Geller's lack of recall is not surprising. In discovery, the government has produced no documents showing that Geller gave Mr. Persico a substantial sum of money in the summer of 1989, the time of the alleged murder plot. Moreover, in the hours of tape-recorded conversations between Geller and Persico -- recordings Geller made between late September 1990 and February 5, 1991 -- there is no mention of a payment for a Black murder, even though the two men discuss their debts to each other at length.[3] In short, all that the jury would have is Geller's ever shifting word that such a plot existed, and that is insufficient. See Huddleston v. United States, 485 U.S. 681 (1988)(other crimes evidence is not admissible unless the trial judge is satisfied that a reasonable juror could find by a preponderance of the evidence that the defendant committed the alleged act).

---

[3] There is significant support for the Mina-Geller murder plot in the recordings. See Ex. F Transcript of Recording dated 11/16/90.



Honorable Sandra L. Townes
June 3, 2012
Page 5

       5.    Finally, we reiterate what we said on Friday: the proof against Michael Persico on the <u>charged</u> crimes is thin. No doubt the government wants the jury to learn of the supposed conspiracy to murder Black to paint Mr. Persico as a bad person willing to resort to violence to assist his accountant to recoup losses. But even in a RICO case, propensity evidence is inadmissible, especially when it has so little relevance to the real issues in dispute. See <u>Murray</u>, 103 F.3d at 318 ("[i]t should go without saying that evidence in a murder trial that the defendant committed [or conspired to commit] another prior murder poses a high risk of unfair prejudice"); <u>see also</u> Saltzburg, <u>et al.</u>, <u>Federal Rules of Evidence Manual</u> §404.02[21] at 404-42 ("the more heinous the uncharged act, the more likely the jury will misuse the evidence and treat the defendant as a bad person, something the rule does not permit").[4]

---

[4]    In its June 3, 2012 letter to the Court, the government repeats its argument that "Geller was afraid of the consequences of failing to repay Michael Persico the money he owed [and] that his discussions about Black with Persico contributed to his fear of Persico." This argument is makeweight. The proof will show (i) that Geller borrowed $100,000 at 16 percent annual interest from Mr. Persico in early 1990 (after the supposed conversation with Black) and that Mr. Persico forgave those modest interest payments in February 1991; and (ii) that Geller borrowed $53,000 from a lawyer-friend of Mr. Persico in late December 1990 (at a time when he (Geller) was cooperating with the FBI and about to enter protective custody) and that the loan was secured by a mortgage on Geller's home. Simply stated, these were not extortionate loans. But even if Geller were to testify that he was afraid of the consequences of not repaying Mr. Persico (whom he knew was related to Carmine Persico and Alphonse Persico and had business dealings with reputed Colombo family associates), he does not need to tell the story of the Black murder conspiracy to make the point.



Honorable Sandra L. Townes
June 3, 2012
Page 6

      For these reasons, we continue to urge that proof of the alleged conspiracy to murder Bruce Black should be excluded.

                                        Respectfully submitted,

                                        Paul Shechtman

PS/wr