UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x
UNITED STATES OF AMERICA,

-against-

MICHAEL J. PERSICO,

Defendant.
----------------------------------------------------x

**MEMORANDUM AND ORDER**

10-CR-147 (S-4) (SLT)

**TOWNES, United States District Judge:**

In Point IV of his Memorandum of Law in Support of his Pretrial Motions, filed March 26, 2012 ("Defendant's Memo"), defendant Michael Persico ("Defendant") moved to suppress, among other things, recordings of "telephone calls placed by Alphonse Persico between October 1991 and January 1992 from the Federal Correctional Facility in Milan, Michigan." Defendant's Memo at 30. Although Point IV incorporated a constitutional argument, it was primarily based on Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§2510-2520, a statute which "generally forbids the intentional interception of wire communications, such as telephone calls, when done without court-ordered authorization." *United States v. Workman*, 80 F.3d 688, 692 (2d Cir. 1996).

As this Court discussed in its memorandum and order dated May 10, 2012 (the "May 10 M&O"), 18 U.S.C. §2511(2) establishes some exceptions to Title III's general prohibition. One of these exceptions provides that "[i]t shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where . . . one of the parties to the communication has given prior consent to such interception." 18 U.S.C. §2511(2)(c). In *United States v. Amen*, 831 F.3d 373 (2d Cir. 1987), *United States v. Willoughby*, 860 F.2d 15 (2d Cir. 1988), and *Workman*, 80 F.3d 688, the Second Circuit inferred

an inmate's consent to the interception of his calls from the fact that the inmate used institutional telephones despite having notice that the calls might be intercepted.

In its response to Point IV, the government attempted to liken the facts in this case to the facts in *Amen*, *Willoughby*, and *Workman*. Specifically, the government argued that Alphonse Persico was on notice of the telephone surveillance policy because of federal regulations, notices placed near telephones and information received at orientation. The government provided adequate evidence of the federal regulations in effect between October 1991 and January 1992, quoting 28 C.F.R. §540.101 (1991). However, the government relied on unsworn hearsay, attributed to unnamed Bureau of Prisons sources, to establish that notices were placed near the telephones used by inmates at FCI Milan and that information concerning that the prison's interception policy was disseminated at orientation.

The government's showing was insufficient to permit this Court to make the factual findings necessary to determine whether the circumstances from which consent could be inferred existed at FCI Milan in late 1991 and early 1992. However, in his Reply Memorandum in Further Support of Defendant's Motion, filed April 30, 2012 ("Reply Memo"), Defendant sought to expand Point IV to encompass "additional prison communications of Alphonse Persico while he was incarcerated at . . . FCI Fairton." Reply Memo at 11, n. 3. Since the Reply Memo raised a Title III claim regarding FCI Fairton to which the government had not had an opportunity to respond, this Court afforded the government the opportunity to include in their response to that claim evidence to substantiate their representations regarding the notices placed near telephones at FCI Milan and the information disseminated at that prison's orientation sessions. *See* May 10 M&O at 23.

2

## *The Subsequent Submissions*

On May 18, 2012, the government responded to this portion of the May 10 M&O by filing a four-page letter. The letter advises the Court that the government does not intend to introduce recordings of telephone calls placed from FCI Fairton, rendering moot any motion to suppress evidence of those telephone calls. Letter to Hon. Sandra L. Townes from AUSAs Nicole M. Argentieri, Rachel J. Nash, and Allon Lifshitz, dated May 18, 2012 (the "May 18 Letter"), at 4, n. 1. However, the letter also attaches three items of evidence in an attempt to establish that there were (1) signs placed near telephones at FCI Milan, which provided notice to inmates that their conversations were subject to monitoring; (2) admissions and orientation handbooks, in which inmates were advised that their calls would be subject to monitoring; and (3) admissions and orientation sessions, in which inmates were advised that their calls would be subject to monitoring.

One of the three items of evidence is a "Program Statement" issued by Director of the Federal Bureau of Prisons ("BoP"), which sets forth the Telephone Regulation for Inmates that were in effect between October 1991 and January 1992. This document, dated May 31, 1983, advised BoP personnel of amendments to 28 C.F.R. §540.101 and other regulations that became effective on July 5, 1983, *see* 48 Fed. Reg. 24,622 (June 1, 1983) – the only amendment to §540.101 prior to its overhaul in April 1994, *see* 59 Fed. Reg. 15,824 (Apr. 4, 1994). While this Program Statement provided "Implementing Information" relating to the other amended regulations, it provided no such information with respect to §540.101, aside from noting that "Staff members are also to be advised of the potential for monitoring of their telephone calls." May 18 Letter at Ex. C, p. 2.

The other two items of evidence attached to the May 18 Letter are affidavits which purport to provide concrete information regarding how this regulation was implemented at FCI Milan. The first affidavit is executed by a BoP Lieutenant, Steven Bardsley, who has worked at FCI Milan for the past 25 years, with the exception of an 18-month period between July 1991 and December 1992. Lt. Bardsley states that throughout his tenure at FCI Milan, there have been signs near the telephones used by prisoners which notify the inmates that their calls are monitored. According to Lt. Bardsley, the signs currently read:

NOTICE

Pursuant to Bureau of Prisons Inmate telephone regulations:

<u>All conversations</u> on this telephone are subject to monitoring. Your use of this telephone constitutes consent to this monitoring. You must contact your unit team to request an unmonitored attorney call.

May 18 Letter, Ex. A, at ¶2 (emphasis in original). Lt. Bardsley does not unequivocally state that this same language appeared on the signs in late 1991 and early 1992, but represents only that he cannot recall the language on these signs having changed at any point during his employment at FCI Milan. *Id.* In addition, Lt. Bardsley states that "[d]uring the entire period of [his] employment at FCI Milan, inmates at FCI Milan were advised in admission and orientation handbooks that their telephone calls would be monitored." *Id.* at ¶3. Lt. Bardsley states that he has "personally observed these handbooks," *id.*, but does not quote any of the language contained therein.

The second affidavit is executed by a Special Investigative Technician, Cheryl Wertenberger, who has worked at FCI Milan since November 1, 1992. Ms. Wertenberger states

that the language quoted by Lt. Bardsley has appeared on signs near the inmate telephones throughout "the entire period of [her] employment." May 18 Letter, Ex. B, at ¶2. Like Lt. Bardsley, Ms. Wertenberger states that "[d]uring the entire period of [her] employment at FCI Milan, inmates at FCI Milan were advised in admission and orientation handbooks that their telephone calls would be monitored." *Id.* at ¶3. However, unlike Lt. Bardsley, Ms. Wertenberger states that she has attended several orientation and admissions sessions – including one during her first year of employment at FCI Milan – at which she has observed inmates being told that their telephone calls would be monitored. *Id.* at ¶4.

In response to the May 18 Letter, Defendant argues that the government has not provided sufficient information to establish that Alphonse Persico was on notice of the telephone monitoring policies at FCI Milan during the period between October 1991 and January 1992, when he made the telephone calls at issue. Defendant notes that Ms. Wertenberger did not even begin working at FCI Milan until November 1992 and, therefore, lacks personal knowledge of the notice received by inmates prior to that date. Defendant further notes that Lt. Bardsley, too, was not present at FCI Milan during the relevant time period, since he left the facility several months prior to October 1991 and did not return until December 1992. Defendant distinguishes *Amen*, *Willoughby*, and *Workman*, observing that in those cases "the government was able to prove that the defendant had notice." Additional Briefing in Further Support of Defendant's Motion to Suppress the Milan Recordings, filed May 25, 2012, at 4.

## *DISCUSSION*

This Court agrees with Defendant that the government's showing is insufficient to establish implied consent. "[I]mplied consent is 'consent in fact' which is inferred 'from

surrounding circumstances indicating that the [party] knowingly agreed to the surveillance.'"
*Griggs-Ryan v. Smith*, 904 F.2d 112, 116-17 (1st Cir. 1990) (quoting *Amen*, 831 F.2d at 378). As the *Griggs-Ryan* Court observed:

> [I]mplied consent – or the absence of it – may be deduced from the circumstances prevailing in a given situation. The circumstances relevant to an implication of consent will vary from case to case, but the compendium will ordinarily include language or acts which tend to prove (or disprove) that a party knows of, or assents to, encroachments on the routine expectation that conversations are private. And the ultimate determination must proceed in light of the prophylactic purpose of Title III – a purpose which suggests that consent should not casually be inferred.

*Id.* at 117 (internal quotations and citations omitted).

In this case, the government has not provided evidence establishing what, if any, notice Alphonse Persico received prior to October 1991 that calls placed on institutional telephones would be monitored. The government has established that the regulations in effect at that time required the wardens of BoP facilities to "provide notice to the inmate of the potential for monitoring," 28 C.F.R. §540.101 (July 5, 1983), and that these regulation were communicated to BoP staff in a Program Statement dated May 31, 1983. However, it is unclear when, how, or whether the warden at FCI Milan provided this notice.

Since Ms. Wertenberger did not begin working at FCI Milan until November 1992, the only evidence provided by the government which relates to the notice provided to inmates at FCI Milan between October 1991 and January 1992 is the affidavit of Lt. Bardsley. In that affidavit, Lt. Bardsley states that has worked at FCI Milan since 1987, but was employed at a different facility during the 18-month period from approximately July 1991 to December 1992. The affidavit states that, throughout the time Lt. Bardsley was employed at FCI Milan, "inmates . . . were advised in admission and orientation handbooks that their telephone calls would be

monitored." Bardsley Affidavit at ¶3. The affidavit also states that, throughout the time Lt. Bardsley was employed at FCI Milan, "signs notifying prisoners that their calls were monitored were placed near telephones used by prisoners." *Id.* at ¶2.

In *Amen*, *Willoughby*, and *Workman*, the government provided evidence to establish that the inmates in question received an orientation handbook and that the handbook apprised the inmates of the telephone monitoring policy. In *Amen*, the Second Circuit quoted the relevant provision of *The Inmate Informational Handbook* which inmates received upon entering or returning to the facility in question, then stated:

> Evidence indicated appellants received actual notice of the monitoring and taping process. When Abbamonte returned to Lewisburg on October 16, 1984, after being incarcerated at Danbury, he attended an admissions and orientation lecture and received a copy of *The Inmate Informational Handbook.* Moreover, prison records indicate that on October 8, 1984, Paradiso's case manager presented him with a form containing the written notice of the monitoring and taping system, which Paradiso refused to sign.

*Amen*, 831 F.2d at 379. In *Willoughby*, the inmate signed a form, which expressly notified him that use of institutional telephones constituted consent to this monitoring, under a statement which read: "I understand that telephone calls I make from institution telephones may be monitored and recorded." *Willoughby*, 860 F.2d at 20. Similarly, in *Workman*, the inmate signed a form indicating that he had received an orientation handbook, which provided notice of the telephone monitoring program. *Workman*, 80 F.3d at 693.

In this case, in contrast, the government has not provided documentation to establish that Alphonse Persico actually received a handbook. The Bardsley Affidavit only implies that he did, representing that all inmates who entered FCI Milan during the time that Lt. Bardsley worked there "were advised in admission and orientation handbooks that their telephone calls would be

7

monitored." Bardsley Affidavit at ¶3. However, the government does not establish when Alphonse Persico entered FCI Milan. Moreover, while Lt. Bardsley represents that he "personally observed these handbooks," *id.*, the government has not provided a copy of the handbook or quoted those portions of the handbook relating to the telephone monitoring.

Lt. Bardlsey's statements regarding the signs placed near the telephones are also vague. The lieutenant states that, throughout his tenure at FCI Milan, there were signs "near" the telephones used by prisoners notifying them that their calls were monitored. *Id.* at ¶2. However, while Lt. Bardsley quotes the language which appears on the signs at present, *id.*, he cannot unequivocally state that this language always appeared on the signs. All he can say is that he does "not recall the language on these signs having changed." *Id.*

This Court declines to speculate, based solely on this equivocal statement, that the language on the signs during the period between October 1991 and January 1992 was the same as it is at present. Indeed, other evidence suggests that these particular signs may not have been introduced until sometime after April 1994. Prior to April 1994, 28 C.F.R. §540.101 provided:

> The Warden shall establish procedures that enable monitoring of telephone conversations on any telephone located within the institution, said monitoring to be done to preserve the security and orderly management of the institution and to protect the public. The Warden must provide notice to the inmate of the potential for monitoring.

28 C.F.R. §540.101 (effective July 5, 1983). The Program Statement which was in effect between October 1991 and January 1992 – a copy of which has been provided by the government – did little more than communicate this regulation to the wardens.

On April 25, 1994, the BoP issued a new Program Statement in connection with extensive revisions to 28 C.F.R. §§540.101 and 540.102 which became effective on May 4,

1994. *See* 59 Fed. Reg. 15,812 (Apr. 4, 1994). This Program Statement required, among other things, that "notice . . . be posted at all monitored telephones 'advis[ing] the user that all conversations from that telephone are subject to monitoring and that use of the telephone constitutes consent to this monitoring,'" *United States v. Lanoue*, 71 F.3d 966, 981 (1st Cir. 1995) (quoting BoP Program Statement 5264.05, ¶6 (Apr. 25, 1994)), *abrograted on other grounds, United States v. Watts*, 519 U.S. 148 (1997). The signs which presently appear near the telephones at FCI Milan virtually track the language of this Program Statement, stating:

> All conversations on this telephone are subject to monitoring. Your use of this telephone constitutes consent to this monitoring. You must contact your unit team to request an unmonitored attorney call.

Bardsley Affidavit at ¶2. Indeed, this same signage is quoted in other reported cases, none of which pre-date 1994. *See, e.g., United States v. Gotti*, 42 F. Supp. 2d 252, 284 (S.D.N.Y. 1999); *United States v. Heatley*, 994 F.Supp. 483, 491 (S.D.N.Y. 1998). Accordingly, even though Ms. Wertenberger claims to recall that the signs which presently appear near the telephones at FCI Milan were there upon her arrival at the facility in November 1992, this Court suspects that these signs were created in response to the April 25, 1994, Program Statement.

Even assuming that Ms. Wertenberger were correct, the government has not provided unequivocal evidence regarding what the signs stated between October 1991 and January 1992. Moreover, there is no evidence regarding precisely where these signs were placed. In light of this lack of evidence, this Court lacks a factual basis for finding that Alphonse Persico, by merely using the telephones at FCI Milan, impliedly consent to the recording of his telephone conversations between October 1991 and January 1992.

9

## *CONCLUSION*

For the reasons set forth above, the government has failed to provide sufficient evidence to establish that Alphonse Persico impliedly consented to the recording of calls he placed from institutional telephones at FCI Milan between October 1991 and January 1992. Accordingly, Defendant's motion to suppress the recordings of these telephone conversations pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, is granted.

**SO ORDERED.**

s/ SLT
/_____
SANDRA L. TOWNES
United States District Judge

Dated: May 30, 2012
Brooklyn, New York