UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA,

-against-

MICHAEL J. PERSICO,

Defendant.
------------------------------------------------------x

**MEMORANDUM AND ORDER**

10-CR-147 (SLT)

**TOWNES, United States District Judge:**

On June 8, 2012, during voir dire to select the jurors to try him on an indictment charging

multiple felony offenses, including racketeering conspiracy, defendant Michael J. Persico

("Defendant" or "Persico") pled guilty to a superseding information charging him with a single

count of conspiracy to commit extortionate extension of credit. Now, more than two years later,

Defendant moves to withdraw that plea, arguing (1) that the Government breached the Plea

Agreement, (2) that there was no valid factual basis for the plea, and (3) that he was

insufficiently informed about the nature of the charge to which he pled guilty. For the reasons set

forth below, Defendant's motion is denied.

## BACKGROUND

Defendant was among nine defendants named in a 27-count superseding indictment (S-4)

which was filed on February 9, 2012. Six of the nine defendants, including Persico, were alleged

to be members or associates of the Colombo organized crime family of La Cosa Nostra who,

collectively, constituted an "enterprise" as defined by 18 U.S.C. § 1961(4). Each of the six

defendants were charged in Count One of the indictment with a racketeering conspiracy in

violation of 18 U.S.C. §1962(d) and with at least some of the other 26 offenses charged in the

indictment.

Count One of the indictment alleged 25 racketeering acts, including two murders. Defendant was alleged to have been involved in one of these murders—the October 20, 1993, murder of one Joseph Scopo—and in the conspiracy to commit that murder. Defendant was also alleged to have participated in several other racketeering acts and was named in 14 other counts of the indictment. Most of the racketeering acts and counts in which Defendant was named involved extortion or conspiracies involving extortionate activities.

Defendant pled not guilty to this indictment and proceeded to trial with two co-defendants: Theodore N. Persico, Jr., and Francis Guerra. However, shortly after jury selection commenced, Defendant entered into a Plea Agreement with the United States Attorney's Office for the Eastern District of New York (the "Office"), which provided that Defendant would plead guilty to a superseding information (S-6) that was to be filed with the Court. That information, which was filed on June 8, 2012, was similar to the superseding indictment in some respects. Like the superseding indictment, it alleged that Defendant was an associate within the Colombo crime family and that the members and associates of the Colombo crime family constituted an "enterprise" as defined in 18 U.S.C. § 1961(4). In addition, both the enterprise and the methods and means allegedly used by that enterprise were described in the superseding information in the exact same manner as in the superseding indictment. But unlike the indictment, the superseding information contained only one count, which charged Defendant with conspiracy in violation of 18 U.S.C. § 371. That charge read, in pertinent part:

> In or about and between May 2009 and February 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MICHAEL J. PERSICO, together with others, did knowingly and intentionally conspire to make one or more extortionate extensions of credit to John Doe #1

and John Doe #2, individuals whose identities are known to the United States Attorney, contrary to Title 18, United States Code, Section 892(a).

In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York and elsewhere, the defendant MICHAEL J. PERSICO, together with others, committed and caused to be committed, among others, the following:

OVERT ACT

(a)    in or about June 2009, the defendant MICHAEL J. PERSICO aided in the extension of a $100,000 usurious loan.

In exchange for Defendant's agreement to, among other things, waive indictment and plead guilty to the superseding information, the Office made several promises. First, it agreed not to bring any "further criminal charges" against Defendant for his participation in various offenses, including all of the offenses with which he was charged in the superseding indictment. Plea Agreement, ¶ 11(a). Second, it agreed to "take no position concerning where within the Guidelines range determined by the Court the sentence should fall." *Id.*, ¶ 11(b). Third, it agreed not to make any "motion for an upward departure under the Sentencing Guidelines." *Id.*, ¶ 11(c).

The Office did not agree, however, to any limitations regarding its communications with the Probation Department. To the contrary, paragraph 2 of the Plea Agreement stated:

> The defendant understands that although imposition of a sentence in accordance with the United States Sentencing Guidelines (the "Guidelines"...) is not mandatory, the Guidelines are advisory and the Court is required to consider any applicable Guidelines provisions as well as other factors enumerated in 18 U.S.C. § 3553(a) to arrive at an appropriate sentence in this case. The Office will advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant, and such information may be used by the Court in determining the defendant's sentence.

### The Plea Allocution

On the afternoon of June 8, 2012, Defendant appeared before the Court to enter his plea.

He was represented by two experienced, retained attorneys: Serita Kedia and Paul Schectman.

Ms. Kedia represented that she had discussed the plea with Defendant and believed that

Defendant was competent to proceed and understood the rights he was waiving by pleading

guilty (T. 4-5).[1] Defendant stated that he was satisfied with his attorneys' representation and did

not need more time to discuss with them his decision to plead guilty (T. 6).

After ascertaining that Defendant, then 55, had been to college and was not under the

influence of drugs or alcohol (T. 4-5), the Court probed his understanding of the charge

contained in the superseding information. Under oath, Defendant stated that he had read and

reviewed the superseding information with counsel prior to the proceeding and understood the

charge contained therein (T. 6). Nonetheless, the Court read the entire charge to Defendant and

summarized those portions of the information which alleged that Defendant was an associate in

the Colombo crime family and that the members and associates of the Colombo crime family

constituted a criminal enterprise (T. 7-8). The Court then asked again, "[D]o you understand

what the charge is?" (T. 8). Defendant answered in the affirmative (T. 8).

The Court then explained the elements which the Government would have to prove in

order to establish that he was guilty of conspiracy to violate 18 U.S.C. § 892(a). First, the Court

read the provisions of 18 U.S.C. § 371 and laid out the elements which the Government would

have to prove beyond a reasonable doubt in order to establish that he was guilty of violating that

---

[1] Numbers in parentheses, preceded by "T," refer to pages in the "Transcript of Criminal Cause for Guilty Plea," dated June 8, 2012.

statute (T. 8-9). In explaining the first of these elements—"[t]hat two or more persons entered into the unlawful agreement charged in the information"—the Court noted that "the government would have to establish beyond a reasonable doubt that two or more persons entered into an unlawful agreement to commit the crime of extortionate extension of credit, in violation of Title 18, Section 892(a) of the United States Code" (T. 9). After reading 18 U.S.C. § 892(a) and explaining the elements of that offense, the Court asked both the prosecution and the defense if its explanation was consistent with their understanding of the elements (T. 9). Both answered in the affirmative (T. 9).

Several minutes later—after the Court questioned Defendant about the Waiver of Indictment, the Constitutional rights which Defendant was relinquishing by pleading guilty, and the Plea Agreement (T. 10-21)—the Court asked Defendant, "[D]o you have any questions that you would like to ask me about the charge in the superseding Information or about your rights or anything else related to this matter that may not be clear to you?" (T. 21-22). Defendant responded, "Everything is clear. No questions" (T. 22).

Defendant then pled guilty to the charge contained in the superseding information (T. 22). When asked by the Court to briefly describe "what you did in connection with the offense that makes you guilty of the offense charged in the superseding Information," Defendant responded, "I arranged for someone to extend $100,000 loan to the trucking company run by James Bambino [*sic*] and Steve Marcus at a usurious interest rate" (T. 23). At the Government's request, Defendant subsequently clarified that his actions took place between May 2009 and February 2010 in the Eastern District of New York (T. 24). The Assistant United States Attorney then stated:

I'm not going to make him allocute to it, but I will just proffer that
the government would prove—be prepared to prove at trial that the
extension of credit was made a[t]—not just a usurious rate, but at a
rate of interest in excess of the annual rate of 45 percent per year,
and that at the time that the loan was made, the two John Does who
this defendant identified believed that Mr. Persico and his
coconspirators had a reputation for the use of extortionate means to
collect extensions of credit (T. 24 (brackets added)).

When asked if there was anything else that the Court should inquire about, Ms. Kedia

initially responded, "No, I don't believe so" (T. 25). However, she then added:

The one thing I would say is, Your Honor went through the
superseding Information, and it does charge the sole count of this
371 conspiracy, conspiracy to violation the extortionate extension
credit. I recognize that it has several pages of extraneous language
about the Colombo family that is not a part and parcel of the
charge, and it is not something that Mr. Persico agrees to or is
allocuting to here today (T. 25).

After some colloquy in which the Government asserted that these allegations were not extraneous

and the Court questioned whether it was necessary for Defendant to allocute to his involvement

in the Colombo crime family, the Assistant United States Attorney stated:

I don't think he has to allocute to it, Judge. I think it goes to what I
said before, which is the perception by the victims that the
defendant and his coconspirators—the defendant was an associate
in the Colombo crime family. And his coconspirators reasonably
believed at the time that they—that they would use—that these
individuals would use extortionate means to collect an extension of
credit. I don't think he has to specifically allocute to satisfy the 371
to being an associate in the Colombo crime family (T. 26).

At the very end of the end of the plea proceedings, Ms. Kedia placed on the record her

"understanding" of portions of the Plea Agreement. Ms. Kedia stated, *inter alia*, "our

understanding is that the government is not going to advocate in any way to the Probation Office

6

or to the Court for a sentence above the Guideline range or where within the Guideline range Mr. Persico should fall" (T. 27). In response, the Government stated, among other things:

> Judge, the reason why the agreement is in writing is because everything that we have agreed to is in the agreement, and the agreement is what controls. And I'm not going to stand here and modify verbally any part of the agreement (T. 27).

After some further colloquy, in which Ms. Kedia stated that she was "just stating our understandings as a whole with respect to the plea agreement" (T. 28), the Court noted, "[T]he plea agreement speaks for itself. So if it ever becomes an issue, we'll have to go back to the plea agreement" (T. 28). The Court then concluded:

> Based upon the information provided today by Mr. Persico, I find that he is acting voluntarily, that he fully understands the charge in the superseding Information, and his rights and the consequences of his plea, and that there is a factual basis for the plea. I therefore accept Mr. Persico's plea of guilty to the charge in the superseding Information (T. 28).

The Court scheduled Defendant's sentencing for September 21, 2012 (T. 28). However, that date has been adjourned on numerous occasions, often at the request of Defendant's counsel, and sentencing has not yet taken place.

### The Pre-sentence Report

In late June 2013, the Probation Department issued a 34-page Pre-sentence Investigation Report relating to Defendant (the "Pre-sentence Report"). One of the 120 paragraphs in that report states, in pertinent part:

> In addition to the single count to which he pleaded guilty, the Government maintains it can prove by a preponderance of the evidence that Michael J. Persico was involved in several additional significant crimes. These offenses cannot be considered in the guidelines calculations for the count of conviction; however, the

> conduct can nevertheless be considered additional criminal conduct and worthy of sentencing consideration per Guideline 5K2.0. The additional criminal activity includes involvement in the murders of John Scopo and Michael Devine, and Persico's longtime operation of a loansharking business.

Pre-sentence Report, ¶ 38 (emphasis omitted). The Pre-sentence Report then details Defendant's involvement in the murders of Scopo and Devine, as well as his involvement in a conspiracy to murder two other men: Joseph Lalima and Bruce Black. *Id.*, ¶¶ 38-40.

### The Instant Motion

On September 29, 2014—about five months after Marc Fernich replaced prior counsel for Defendant—Defendant moved to withdraw his plea. Defendant's motion papers consist of a single document: a 38-page memorandum of law ("Defendant's Memo") which contains two points. In Point I, Defendant argues that the Government breached the Plea Agreement by "engaging in overt sentencing advocacy before the Probation Department." Defendant's Memo, p. 2. Citing to paragraph 38 of the Pre-sentence Report, Defendant argues that the Government breached paragraphs 11(b) and (c) of the Plea Agreement by telling the Probation Department it could "prove by a preponderance of the evidence that Michael J. Persico was involved in several additional significant crimes," including two murders.

Point II contains two separate arguments relating to the requirements of Rule 11 of the Federal Rules of Criminal Procedure. First, Defendant argues that the Court was incorrect in concluding that there was an adequate factual basis for the plea, as required by Rule 11(b)(3). Defendant argues that his plea allocution established only that he committed the overt act charged in the superseding information, and that the record does not contain facts to establish that Defendant was involved in a conspiracy or that he possessed the requisite mental state.

Second, Defendant argues that the Court failed to ascertain that he understood the nature of the charge to which he was pleading, as required by Rule 11(b)(1)(G). These arguments and the Government's response to them—contained in 19-page letter to the Court dated October 14, 2014 (the "Government's Response")—are described in more detail in the Discussion below.

## *DISCUSSION*

### *The Alleged Breach of the Plea Agreement*

"Plea agreements are interpreted in accordance with contract law principles." *United States v. Colon*, 220 F.3d 48, 51 (2d Cir. 2000) (citing cases). In accordance with those principles, courts "look[ ] to the reasonable understanding of the parties as to the terms of the agreement" in order to determine whether a plea agreement has been breached. *United States v. Riera*, 298 F.3d 128, 133 (2d Cir. 2002) (quoting *Colon*, 220 F.3d at 51) (brackets added in *Riera*). "If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *Torres v. Walker*, 356 F.3d 238, 245 (2d Cir. 2004) (quoting *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999)). "Moreover, a party cannot create an ambiguity in an otherwise plain agreement merely by urg[ing] different interpretations in the litigation." *Id.* (brackets in *Red Ball*; internal quotation marks in *Red Ball* omitted).

Although plea agreements are to be interpreted in accordance with these general contract principles, the Second Circuit has noted that plea agreements are "unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain." *United States v. Padilla*, 186 F.3d 136, 140 (2d Cir. 1999) (quoting *United States v. Ready*, 82

F.3d 551, 558 (2d Cir. 1996)) (internal citations and quotation marks in *Ready* omitted). The

Second Circuit has observed:

> Several rules of interpretation, consistent with general contract law principles, are suited to the delicate private and public interests that are implicated in plea agreements. First, courts construe plea agreements strictly against the Government. This is done for a variety of reasons, including the fact that the Government is usually the party that drafts the agreement, and the fact that the Government ordinarily has certain awesome advantages in bargaining power.
>
> Second, we construe the agreement against a general background understanding of legality. That is, we presume that both parties to the plea agreements contemplated that all promises made were legal, and that the non-contracting "party" who implements the agreement (the district judge) will act legally in executing the agreement.
>
> Finally, courts may apply general fairness principles to invalidate particular terms of a plea agreement.

*Id.* (quoting *Ready*, 82 F.3d at 558-59) (internal citations in *Ready* omitted).

In this case, Defendant asserts that the United States Attorney's Office violated the terms

of the Plea Agreement by telling the Probation Department that it could "prove by a

preponderance of the evidence that [Defendant] was involved in several additional significant

crimes." Defendants asserts that this conduct was forbidden by paragraphs 11(b) and (c) of the

Plea Agreement or, in the alternative, was conduct which "Persico reasonably understood [the

Plea Agreement] to preclude." Defendant's Memo, p. 5.

Preliminarily, this Court notes that it is unclear precisely what the United States

Attorney's Office told the Probation Department. The sole basis for Defendant's argument

appears to be a single line in the Pre-sentence Report which states, in pertinent part, that "the

Government maintains it can prove by a preponderance of the evidence that Michael J. Persico was involved in several additional significant crimes." Pre-sentence Report, ¶ 38 (emphasis omitted). While the Government argues that Defendant has not filed an affidavit in support of its motion, Government's Response, p. 1, n. 1, the Government does not argue that this argument lacks a factual basis. Accordingly, the Court will assume, for purposes of this motion, that a representative of the United States Attorney's Office expressly told the Probation Department that the Government could prove by a preponderance of the evidence that Defendant was involved in "several additional significant crimes," including the murders of Joseph Scopo and Michael Devine.

Even assuming it took place, this conduct would not violate the express terms of terms of paragraphs 11(b) and (c) of the Plea Agreement. Although Defendant paraphrases those provisions as stating that the "government will take no position concerning where within the guideline range sentence should fall and seek no upward departure," Defendant's Memo, p. 5, n. 2, that paraphrasing eliminates important nuances. Paragraph 11(b) actually provides that the United States Attorney's Office will "take no position concerning where within the Guidelines range *determined by the Court* the sentence should fall." (Italics added). Paragraph 11(c) only prohibits the United States Attorney's Office from making a "*motion* for an upward departure under the Sentencing Guidelines." (Italics added).

The language italicized by the Court above unambiguously prohibits advocacy only before the Court. It cannot reasonably be interpreted as prohibiting advocacy before the Probation Department prior to the drafting of the Pre-sentence Report. After all, a court cannot determine the Guidelines range until after it receives the Pre-sentence Report and adjudicates any

objections thereto. Similarly, a motion for an upward departure from the Guidelines range must be addressed to the sentencing court.

Although Defendant and his attorneys may have understood the Plea Agreement as prohibiting advocacy before the Probation Department, their understanding was not a reasonable interpretation of the language of paragraphs 11(b) and (c). Moreover, it became readily apparent during the plea proceedings that Defendant's understanding was not shared by the Government. Near the end of the plea proceedings, Ms. Kedia stated, "our understanding is that the government is not going to advocate in any way to the Probation Office or to the Court for a sentence above the Guideline range or where within the Guideline range Mr. Persico should fall" (T. 27). The Government not only refused to endorse that statement, but expressly rejected it as an attempt to "modify verbally ... part of the agreement" (T. 27).

Furthermore, paragraph 2 of the Plea Agreement authorizes the Government to engage in the conduct which allegedly violated paragraphs 11(b) and (c). That paragraph notes that "the Court is required to consider ... factors enumerated in 18 U.S.C. § 3553(a) to arrive at an appropriate sentence in this case," and states that "[t]he Office will advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant ...." Although paragraph 2 does not expressly authorize the Office to characterize the strength of its evidence of criminal activity, that authorization is implicit in the rationale for providing the information to the Probation Department in the first place. The Probation Department must be informed of the quantity and strength of the evidence of a defendant's criminal activity in order to properly advise the sentencing court.

Moreover, the fact that the language of paragraph 2 does not explicitly authorize the Government to characterize the strength of its evidence does not imply that paragraph 2 prohibits the Government from doing so. Paragraph 2 does not set any limitations on the information which can be provided to the Court with respect to sentencing. Indeed, any such limitations might well violate 18 U.S.C. § 3661, which provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

The cases on which Defendant principally relies in support of Point I are readily distinguishable. In *United States v. Vaval*, 404 F.3d 144 (2d Cir. 2005), the Government had entered into a plea agreement which "prohibited it from seeking an upward departure or taking a position on the appropriate sentence within the applicable Guidelines range." *Id.* at 153. At sentencing, however, the prosecutor "volunteered highly negative characterizations of the appellant's criminal history as 'appalling' and his purported contrition as 'disingenuous.'" *Id.* Then, after noting that the guidelines prohibited the Government from "looking at or calculating certain offenses," the prosecutor "went on to do just that by stating, '[b]ut certainly this is not this defendant's first or second offense.'" *Id.* Finally, while acknowledging that the plea agreement prohibited the Government from seeking an upward departure, the prosecutor stated, "I think, technically, I could make an upward departure [argument]." *Id.*

In light of these repeated, improper comments to the sentencing court, the Second Circuit concurred with the appellant's view that "the government breached the plea agreement by its argumentative relating of the facts of appellant's crime and the seriousness of his criminal

history." *Id.* at 152. The Second Circuit noted, *inter alia*, that it was "difficult to draw a principled distinction between the government actually moving for an upward departure and stating that it 'technically' could move for such a departure and then adding arguments that would support such a departure." *Id.* at 153. However, the facts of *Vaval* are not comparable to the facts of this case, in which the Government made a single comment to the Probation Department.

United States v. Griffin, 510 F.3d 354 (2d Cir. 2007)—a case frequently cited in Defendant's Memo—also involved comments made by the prosecutor to the sentencing court, not comments made to the Probation Department. Defendant's counsel attempts to disguise this fact by cobbling together quotes from *Griffin* in a misleading manner. Defendant's counsel represents that the *Griffin* Court "warned: 'Where the government's commentary reasonably appears to seek to influence' Probation 'in a manner incompatible with the agreement, we will not hesitate to find a breach, notwithstanding formal language of disclaimer." Defendant's Memo, p. 7 (quoting *Griffin*, 510 F.3d at 361). In fact, that quoted portion of *Griffin* was part of a paragraph addressing the question of "[w]hether the government breaches a plea agreement by making allegedly impermissible comments *to the sentencing court*." *Griffin*, 510 F.3d at 361 (emphasis added). After noting that this question had been "the subject of substantial discussion in this Circuit," the Second Circuit stated:

> Our cases have not yielded a bright-line rule as to the leeway the
> government has with respect to what it tells *the court* while
> operating under such an agreement. "[The] circumstances must
> [therefore] be carefully studied in context, and where the
> government's commentary reasonably appears to seek to influence
> *the court* in a manner incompatible with the agreement, we will not
> hesitate to find a breach, notwithstanding formal language of

14

disclaimer." *United States v. Amico*, 416 F.3d 163, 167 n. 2 (2d Cir. 2005).

*Id.* (brackets in original; emphasis added).

In *United States v. Wyatt*, No. 06-cr-782 (DLI), 2008 WL 2433613 (E.D.N.Y. June 12, 2008)—a case discussed extensively in Defendant's reply papers—the Government also engaged in advocacy before the sentencing court. In that case, the question before Judge Irizarry was whether the Government had violated a provision of a plea agreement which "prohibited the government from using information already in its possession at the time of the plea to advocate for a specific sentence within the guidelines range or to move for an upward departure." *Id.* at *7. At the time the plea was entered, the Government had information regarding the defendant's involvement in a murder perpetrated by the Folk Nation gang, although the prosecutor in the *Wyatt* case was apparently unaware of that fact. That prosecutor included information concerning the defendant's involvement in the murder in a sentencing submission sent directly to Judge Irizarry. At a subsequent conference, the prosecutor argued that he had disclosed the information in light of the Government's "obligation to bring to the Court all of the information that was known to it about this defendant," so that the judge "could consider it both [ ] for 3553(a) consideration in general and for whatever other purpose or effect it might have." *Id.* at *11. However, the prosecutor then used the information to advocate for a sentence near the top of the guidelines range. *Id.* Judge Irizarry noted:

> [T]he first reason given by the government, to fulfill its obligation
> to inform the court, is consistent with the plea agreement. ... The
> second reason, however, shows that the government was also using
> the Folk Nation information to oppose defense counsel's request
> for a non-guidelines sentence below the recommended range and
> argue in favor of the 63-78-month guidelines range.

15

*Id.* (ellipsis added; internal quotations omitted). Judge Irizarry concluded that this conduct violated the plea agreement.

*Wyatt* is distinguishable from this case. In *Wyatt*, as in *Vaval*, the Government engaged in advocacy before the sentencing court which violated the express terms of a provision of the plea agreement. In this case, in contrast, the Government's allegedly impermissible conduct served only to "inform the court" in a manner "consistent with the plea agreement." *See id.*, at *11. Accordingly, the argument raised in Point I of Defendant's Memo is without merit.

### The Factual Basis for the Plea

The first argument raised in Point II of Defendant's Memo alleges a violation of Rule 11(b)(3) of the Federal Rules of Criminal Procedure, which provides that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." In accepting Defendant's guilty plea, this Court found that there was "a factual basis for the plea" (T. 28). Although neither Defendant nor his two experienced attorneys contested that finding during the plea proceedings, Defendant now argues that there was no valid factual basis for the plea.

Rule 11(b)(3) and its predecessors were "designed to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *United States v. Garcia*, 587 F.3d 509, 514 (2d Cir. 2009) (internal quotations and citations omitted). Under this rule, a court must "assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *United States v. Maher*, 108 F.3d 1513, 1524 (2d Cir. 1997). "The ideal means to establish the factual basis for a guilty

plea is for the district court to ask the defendant to state, in the defendant's own words, what the defendant did that he believes constitutes the crime to which he is pleading guilty." *United States v. Tunning*, 69 F.3d 107, 112 (2d Cir. 1995). If "the district court ensures that the defendant's statement includes conduct—and mental state if necessary—that satisfy every element of the offense, there should be no question concerning the sufficiency of the factual basis for the guilty plea." *Id.*

"This 'ideal' method is by no means the only method, however." *Id.* In determining whether an adequate factual basis exists, a court is "not limited to an examination of the defendant's plea allocution, but may look more broadly to 'any facts on the record at the time of the plea proceeding.'" *Garcia*, 587 F.3d at 514 (quoting *United States v. Adams*, 448 F.3d 492, 499 (2d Cir. 2006)). In other words, "so long as the facts relied on are placed on the record at the time of the plea, 'the district court, in determining whether there was a factual basis for the plea, [i]s free to rely on any facts at its disposal—not just the admissions of the defendant.'" *Maher*, 108 F.3d at 1524-25 (quoting *Irizarry v. United States*, 508 F.2d 960, 967 (2d Cir. 1975)) (brackets added in *Maher*). Thus, "the district court may rely on representations of ... the attorneys for the government and the defense ... and indeed may use 'whatever means is appropriate in a specific case.'" *United States v. Culbertson*, 670 F.3d 183, 190 (2d Cir. 2012) (quoting *Maher*, 108 F.3d at 1524 (internal quotations omitted; ellipses added). However, a court cannot "find that a factual basis exists when the defendant actively contests a fact constituting an element of the offense in the absence of circumstances warranting the conclusion that the defendant's protestations are 'unworthy of belief.'" *Id.* (quoting *Godwin v. United States*, 687 F.2d 585, 590 (2d Cir. 1982)).

In this case, Defendant pled guilty to a single count of conspiracy to commit an offense against the United States, a violation of 18 U.S.C. § 371. "The elements of a § 371 conspiracy are clearly established: (1) an agreement between two or more persons to commit a specified federal offense, (2) the defendant's knowing and willful joinder in that common agreement, and (3) some conspirator's commission of an overt act in furtherance of the agreement." *United States v. Snype*, 441 F.3d 119, 142 (2d Cir. 2006). The "federal offense" specified in the charge to which Defendant pled guilty is 18 U.S.C. § 892(a), which prohibits making, or conspiring to make, an "extortionate extension of credit." The term "extortionate extension of credit" is defined in 18 U.S.C. § 891(6) to mean "any extension of credit with respect to which it is the understanding of the creditor and the debtor at the time it is made that delay in making repayment or failure to make repayment could result in the use of violence or other criminal means to cause harm to the person, reputation, or property of any person." The count to which Defendant pled guilty charged only one overt act, alleging that "[i]n or about June 2009," Defendant "aided in the extension of a $100,000 usurious loan."

Defendant's statement alone did not make out all three elements of a conspiracy to commit an extortionate extension of credit. When the Court asked him what he had done that made him "guilty of the offense charged in the superseding information," Defendant stated only that he "arranged for someone to extend $100,000 loan to the trucking company run by James Bambino [*sic*] and Steve Marcus at a usurious interest rate" (T. 23). Upon subsequent inquiry, Defendant added that his actions took place between May 2009 and February 2010 in the Eastern District of New York (T. 24).

Defendant asserts that these admissions, taken together, established only the third element: commission of the overt act alleged in the superseding information. *See* Defendant's Memo, p. 28. Defendant argues that the Court failed to "elicit a factual basis demonstrating (a) the existence of a conspiracy to make an extortionate extension of credit, (b) that Persico knowingly and willfully joined such a conspiracy or (c) that at the time the loan was extended, Persico had the requisite intent to make him guilty of the crime." *Id.*, p. 29 (emphasis omitted). Defendant's analysis, however, largely ignores the proffer made by the Government during the plea allocution. The Government represented that it was "prepared to prove at trial that the extension of credit was made a[t]—not just a usurious rate, but at a rate of interest in excess of the annual rate of 45 percent per year" (T. 24 (brackets added)). In addition, the Government stated that "at the time that the loan was made, the two John Does [*i.e.*, Bombino and Marcus] ... believed that Mr. Persico and his coconspirators had a reputation for the use of extortionate means to collect extensions of credit" (T. 24).

In order to understand the significance of the Government's representations, this Court must briefly discuss the provisions of 18 U.S.C. § 892(b). This subsection provides that the Government can make out a prima facie case that a particular extension of credit was extortionate by proving that four "factors were present in connection with the extension of credit in question ...." The four factors are as follows:

> (1) The repayment of the extension of credit, or the performance of any promise given in consideration thereof, would be unenforceable, through civil judicial processes against the debtor ... in the jurisdiction within which the debtor, if a natural person, resided ... at the time the extension of credit was made.

(2) The extension of credit was made at a rate of interest in excess of an annual rate of 45 per centum calculated according to the actuarial method of allocating payments made on a debt between principal and interest, pursuant to which a payment is applied first to the accumulated interest and the balance is applied to the unpaid principal.

(3) At the time the extension of credit was made, the debtor reasonably believed that either (A) one or more extensions of credit by the creditor had been collected or attempted to be collected by extortionate means, or the nonrepayment thereof had been punished by extortionate means; or (B) the creditor had a reputation for the use of extortionate means to collect extensions of credit or to punish the nonrepayment thereof.

(4) Upon the making of the extension of credit, the total of the extensions of credit by the creditor to the debtor then outstanding, including any unpaid interest or similar charges, exceeded $100.

The Government's representations, coupled with Defendant's own admissions, made out all four of these elements. First, Defendant himself admitted that he arranged for the extension of a loan "at a usurious interest rate" (T. 23). Since usurious contracts are unenforceable, *see, e.g.,* N.Y. Gen. Oblig. Law §§ 5-511; N.Y. Penal Law § 190.40; *Lloyd Capital Corp. v. Pat Henchar, Inc.,* 80 N.Y.2d 124, 127 (N.Y. 1992), Defendant's own characterization of the loan as "usurious" was sufficient to establish the first factor.

The Government's representations specifically addressed the second and third factors. With respect to the second factor, the Government stated that the rate of interest on the loan which Defendant arranged was "in excess of the annual rate of 45 percent per year" (T. 24). With respect to the third factor, the Government stated that "at the time that the loan was made, the two John Does [*i.e.,* the debtors alleged in the count to which Defendant pled guilty] ...

believed that Mr. Persico and his coconspirators had a reputation for the use of extortionate means to collect extensions of credit" (T. 24).

Finally, the fourth factor, like the first, was made out by Defendant's allocution. Defendant represented that he had arranged a loan of $100,000, which was 1,000 times the amount required under the fourth factor. Accordingly, Defendant's allocution, together with the Government's representations, provided a factual basis for finding that the loan which Defendant "arranged" to make constituted an "extortionate extension of credit" in violation of 18 U.S.C. § 892. Moreover, Defendant's admission that he "arranged for someone" to make the loan implies that he conspired to make the extortionate extension of credit.

The same facts that make out a prima facie case of extortionate extension of credit also support the inference that Defendant acted with the requisite intent. Citing to *United States v. Lombardozzi*, 491 F.3d 61 (2d Cir. 2007), among other cases, Defendant argues that "nothing in the record demonstrates that *Persico possessed the requisite intent* to cause the borrowers to believe that delinquency or default in payment could prompt the use of violence—an indispensible element for the offense of conviction." Defendant's Memo, p. 32 (emphasis in original). However, *Lombardozzi* itself noted that a defendant's state of mind "can reasonably be inferred from the terms of the loans that he extended." *Lombardozzi*, 491 F.3d at 71. As the Second Circuit noted, "a jury may permissibly infer that someone who makes an unsecured loan and charges exorbitant interest rates surely intends to back up the loan with threats of violence." *Id.* (citing *United States v. Polizzi*, 801 F.2d 1543, 1555 (9th Cir. 1986)).

In sum, Defendant's admissions, coupled with the Government's representations, establish a factual basis for finding that Defendant conspired with another to make an

extortionate extension of credit. The Government's representations about terms of the loan—notably, the whopping 45% annual interest rate—and the borrower's beliefs regarding Defendant's reputation establish a factual basis for finding that Defendant acted with the requisite mental state. Finally, Defendant concedes that his plea allocution established that he committed an overt act in furtherance of the conspiracy. Accordingly, there was a factual basis for Defendant's plea (T. 28).

### Defendant's Understanding of the Nature of the Charge

The second argument raised in Point II of Defendant's Memo alleges a violation of Rule 11(b)(1) of the Federal Rules of Criminal Procedure, which provides, in pertinent part:

> Before the court accepts a plea of guilty ... , the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, ... (G) the nature of each charge to which the defendant is pleading.

Fed. R. Civ. P. 11(b)(1) (ellipses added). However, Rule 11 does not tell district courts "precisely *how* to perform this important task in the great variety of cases that ... come before them." *Maher*, 108 F.3d at 1521 (quoting *United States v. Saft*, 558 F.2d 1073, 1079 (2d Cir. 1977)) (ellipsis in *Maher*; emphasis in *Saft*). In addition, the Supreme Court, noting that "[t]he nature of the inquiry required by Rule 11 must necessarily vary from case to case," has declined to "establish any general guidelines other than those expressed in the Rule itself," noting that "(m)atters of reality, and not mere ritual, should be controlling." *McCarthy v. United States*, 394 U.S. 459, 467 n. 20 (1969) (brackets added; parentheses in original; internal quotations and citation omitted).

The Second Circuit has opined that "[i]t is usually the better practice for the district court in conducting plea allocutions to detail the elements of the offenses charged in the counts to which the defendants are pleading guilty or to read those counts of the indictment to them." *Maher*, 108 F.3d at 1524. Yet, the Second Circuit has upheld guilty pleas in which a defendant merely told the court that he had read the indictment, discussed it with counsel, and understood the charges to which he was pleading guilty. *See id.*, 108 F.3d at 1523 (upholding guilty pleas under Rule 11 where "each defendant acknowledged that he had read the indictment, had discussed the charges with his attorney, and knew that he was pleading guilty to counts charging money laundering and conspiracy to launder money"); *United States v. Parkins*, 25 F.3d 114, 118 (2d Cir. 1994) (holding that defendant received requisite notice under Rule 11 where, *inter alia*, he acknowledged at plea hearing that he had "read [the Information], understood it, and discussed it with his attorney"); *see also United States v. Obiorah*, 536 Fed. Appx. 53, 56 (2d Cir. 2013) (summary order) (upholding a guilty plea to drug conspiracy charges where the defendant stated that he had read and understood the indictment and had conferred with his attorney about the indictment, the Government summarized the elements of the conspiracy charges, and the defendant then stated that he understood the elements of those charges and that he had consulted with counsel about them).

In this case, the Court went beyond even the "better practice" recommended in *Maher*. First, the Court established, through Defendant's testimony under oath, that he had read and reviewed the superseding information with counsel prior to the plea proceeding and that he understood the charge contained therein (T. 6). The Court then read the entire charge to Defendant, summarized those portions of the information which alleged that Defendant was an

associate in the Colombo crime family and that the Colombo crime family was a criminal enterprise, and asked, "[D]o you understand what the charge is?" (T. 7-8). Although Defendant answered in the affirmative (T. 8), the Court explained the elements which the Government would have to prove in order to establish that he was guilty of conspiracy to violate 18 U.S.C. § 892(a), and asked both the prosecution and the defense if its explanation was consistent with their understanding of the elements (T. 9). Both answered in the affirmative (T. 9).

Although the Court's inquiry to that point went well beyond the inquiries which were held to satisfy Rule 11(b)(1)(G)'s requirements in *Maher*, *Parkins* and *Obiorah*, Defendant nonetheless asserts that the inquiry was defective because "[a]t no time *after* reading part of the information or stating the offense elements did the Court ask if Persico understood the charge, the requisite elements or 'the law in relation to the facts.'" Defendant's Memo, pp. 36-37 (emphasis in original). Defendant is mistaken. Several minutes *after* the Court explained the elements of the charge to which Defendant was pleading guilty, the Court asked Defendant, "[D]o you have any questions that you would like to ask me about the charge in the superseding information or about your rights or anything else related to this matter that may not be clear to you?" (T. 21-22). Defendant responded, "Everything is clear. No questions" (T. 22).

Such '[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (brackets added). Defendant, who has not provided an affidavit in support of his motion, has not adduced any evidence to suggest that he did not understand the nature of the charge to which he pled guilty. At most, Defendant has provided "conclusory allegations unsupported by specifics," which are "subject to summary

dismissal." *Id.* Accordingly, Defendant's argument that the Court did not satisfy the requirements of Rule 11(b)(1)(G) is entirely without merit.

*CONCLUSION*

For the reasons set forth above, Defendant's motion to withdraw his plea of guilty to the charge contained in the superseding information is denied.

**SO ORDERED.**

S/
SANDRA L. TOWNES
United States District Judge

Dated: October 29, 2014
       Brooklyn, New York