UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
UNITED STATES OF AMERICA,

-against-

MICHAEL J. PERSICO,

                          Defendant.
---------------------------------------------------x

**MEMORANDUM AND ORDER**

10-CR-147 (SLT)

**TOWNES, United States District Judge:**

In a memorandum and order dated October 29, 2014, and entered October 30, 2014—*United States v. Persico*, No. 10-CR-147 (SLT), 2014 WL 5502325 (E.D.N.Y. Oct. 30, 2014) (hereafter, "*Persico*")—this Court denied a motion by defendant Michael J. Persico ("Defendant" or "Mr. Persico") which sought to withdraw his guilty plea on the grounds (1) that the Government breached the Plea Agreement, (2) that there was no valid factual basis for his plea, and (3) that Mr. Persico was insufficiently informed about the nature of the charge to which he pled guilty. In a letter filed January 21, 2015, Defendant renews that motion, principally arguing that the Government's letter of January 19, 2015, which discussed Defendant's criminal history in the course of arguing that the Court should not impose a sentence below the guidelines range, violates the Plea Agreement. Defendant also requests reconsideration of the ruling that there was a sufficient factual basis for the plea and seeks an adjournment of a *Fatico* hearing scheduled for January 23, 2015.

In an order dated January 21, 2015, the Court granted that portion of the motion which requested adjournment of the *Fatico* hearing, rescheduling that hearing for March 3, 2015, at 10:00 a.m. The Court deferred decision on the remainder of the motion and gave the Government until January 26, 2015, in which to file a response. Having now received and

considered both the Government's response (the "Response") and Defendant's reply thereto (the "Reply"), the Court denies Defendant's motion in its entirety for the reasons set forth below.

## *BACKGROUND*

Since familiarity with *Persico* is assumed, this Court will only repeat those facts germane to the instant motion. Defendant was among nine defendants named in a 27-count superseding indictment (S-4) which was filed on February 9, 2012. Count One of the indictment alleged 25 racketeering acts, including two murders. Defendant was alleged to have been involved in one of these murders—the October 20, 1993, murder of one Joseph Scopo—and in the conspiracy to commit that murder. Defendant was also alleged to have participated in several other racketeering acts and was named in 14 other counts of the indictment. Most of the racketeering acts and counts in which Defendant was named involved extortion or conspiracies involving extortionate activities.

On June 8, 2012, shortly after jury selection commenced, Defendant pled guilty to a superseding information which charged Defendant with conspiracy in violation of 18 U.S.C. § 371. In a written plea agreement (the "Plea Agreement"), the Government promised (1) not to bring any "further criminal charges" against Defendant for his participation in various offenses, including all of the offenses with which he was charged in the superseding indictment (Plea Agreement, ¶ 11(a)); (2) to "take no position concerning where within the Guidelines range determined by the Court the sentence should fall" (*id.*, ¶ 11(b)); and (3) not to make any "motion for an upward departure under the Sentencing Guidelines" (*id.*, ¶ 11(c)).

During the course of the plea proceedings, Serita Kedia—one of two experienced, capable attorneys who represented Defendant—essentially attempted to orally modify the Plea

2

Agreement by placing on the record her "understanding" of portions of that agreement. Ms. Kedia stated, *inter alia*:

> [O]ur understanding is that the government is not going to advocate in any way to the Probation Office or to the Court for a sentence above the guideline range or where within the Guideline range Mr. Persico should fall. That's entirely up to the Court. Of course, we will be advocating for a sentence below the Guideline range, but we understand, of course, and Mr. Persico understands that it's up to the Court to impose sentence here.

Plea Transcript, p. 27 (brackets added). Assistant United States Attorney Argentieri expressly refused to ratify Ms. Kedia's interpretation of the Plea Agreement, stating, among other things:

> [T]he reason why the agreement is in writing is because everything that we have agreed to is in the agreement, and the agreement is what controls. And I'm not going to stand here and modify verbally any part of the agreement.

*Id.* (brackets added).

During the plea allocution, the Court asked Defendant to briefly describe "what you did in connection with the offense that makes you guilty of the offense charged in the superseding Information." Defendant responded, "I arranged for someone to extend $100,000 loan to the trucking company run by James Bambino [*sic*] and Steve Marcus at a usurious interest rate." *Id.*, p. 23. The Assistant United States Attorney subsequently added:

> [T]he government would ... be prepared to prove at trial that the extension of credit was made a[t] ... not just a usurious rate, but at a rate of interest in excess of the annual rate of 45 percent per year, and that at the time that the loan was made, the two John Does who this defendant identified believed that Mr. Persico and his coconspirators had a reputation for the use of extortionate means to collect extensions of credit

*Id.*, p. 24 (brackets added)).

3

When asked if there was anything else that the Court should inquire about, Ms. Kedia stated:

> The one thing I would say is, Your Honor went through the superseding Information, and it does charge the sole count of this 371 conspiracy, conspiracy to violate the extortionate extension credit. I recognize that it has several pages of extraneous language about the Colombo family that is not a part and parcel of the charge, and it is not something that Mr. Persico agrees to or is allocuting to here today.

*Id.*, p. 25. After some colloquy, in which the Government asserted that these allegations were not extraneous and the Court questioned whether it was necessary for Defendant to allocute to his involvement in the Colombo crime family, the Assistant United States Attorney stated:

> I don't think he has to allocute to it, Judge. I think it goes to what I said before, which is the perception by the victims that the defendant and his coconspirators—the defendant was an associate in the Colombo crime family. And his coconspirators reasonably believed at the time that they—that they would use—that these individuals would use extortionate means to collect an extension of credit. I don't think he has to specifically allocute to satisfy the 371 to being an associate in the Colombo crime family.

*Id.*, at 26.

***The Previous Motion***

On September 29, 2014—about five months after Marc Fernich replaced prior counsel for Defendant—Defendant moved to withdraw his guilty plea. Defendant principally argued that the Government breached paragraphs 11(b) and (c) of the Plea Agreement by engaging in overt sentencing advocacy before the Probation Department, telling the Probation Department it could prove by a preponderance of the evidence that Mr. Persico was involved in several additional significant crimes, including two murders. Defendant also argued, *inter alia*, that the Court was

4

incorrect in concluding that there was an adequate factual basis for the plea, as required by Rule 11(b)(3) of the Federal Rules of Criminal Procedure. Specifically, Defendant argued that his plea allocution established only that he committed the overt act charged in the superseding information, and that the record did not contain facts to establish that Defendant was involved in a conspiracy or that he possessed the requisite mental state.

The Court rejected both of these arguments. With respect to the first argument, the Court carefully examined the provisions of paragraph 11 of the Plea Agreement, noting that they unambiguously prohibited the Government from (1) taking a "position concerning where within the Guidelines range determined by the Court the sentence should fall," and (2) making a "motion for an upward departure under the Sentencing Guidelines." The Court reasoned that the prohibited actions could only be taken before the Court, and that the Plea Agreement could not "reasonably be interpreted as prohibiting advocacy before the Probation Department prior to the drafting of the Pre-sentence Report." *Persico*, 2014 WL 5502325, at *7.

With respect to the second argument, the Court found there was an adequate factual basis for Defendant's plea. In the course of analyzing whether there was a basis for finding that Defendant acted with the requisite intent, the Court relied on *United States v. Lombardozzi*, 491 F.3d 61 (2d Cir. 2007), for the proposition that a defendant's state of mind "can reasonably be inferred from the terms of the loans that he extended." *Id.* at 71. Since Defendant admitted making usurious loans to Bombino and Marcus which, according to the Government, bore interest rates of 45 percent per annum, the Court concluded that there was a factual basis for finding that Defendant acted with the requisite intent.

*The Government's Sentencing Letter*

After handing down the decision denying Defendant's motion, the Court scheduled a *Fatico* hearing. On January 19, 2015, shortly before the scheduled date for that hearing, the Government submitted a four-page letter relating to sentencing (hereafter, the "Sentencing Letter"). That letter assumes—not necessarily correctly—that, because (1) the Government calculated that the Guidelines range will be 37 to 46 months, (2) Defendant stipulated to this calculation during the plea proceedings and (3) the Probation Department calculated the same range in its Pre-sentence report, the Court will also determine the Guidelines range to be 37 to 46 months. Sentencing Letter, p. 2. Citing to Ms. Kedia statement about seeking a sentence below the Guidelines range, the Government then argues that sentencing within that range would be appropriate. *Id.*

In support of that argument, the Government discusses, in four separate paragraphs, the "Nature and Circumstances of the Offense," "the History and Characteristics of the Defendant," and the need for the sentence to reflect "the Seriousness of the Offense" and to deter Defendant and others from future wrongdoing. In the first of these paragraphs, the Government states that Defendant provided "a loansharking loan" to "co-defendants James Bombino and Theodore Persico, Jr., as well as a third individual ...." *Id.*, pp. 2-3. The Government asserts that Defendant was able to make such loans and to expect repayment "because of his position as a powerful associate in the Colombo organized crime family," which the Government characterizes as "a powerful, violent criminal enterprise." *Id.*, p. 3. The Government further states that loansharking is a "serious crime" which allows the Colombo crime family to thrive and which "often results in violence or threats of violence." *Id.*

The second paragraph begins by citing to that portion of the plea proceedings in which Ms. Kedia stated that she intended to request a sentence below the Guidelines range. Assuming that Defendant's current counsel will employ a similar strategy, the Government argues "that a sentence below the Guidelines range would be inappropriate in light of the defendant's history and characteristics." *Id.* The remainder of the paragraph describes the proof of Defendant's prior crimes that the Government intends to offer at the *Fatico* hearing, noting that most of these crimes "were the subject of extensive testimony during the trial of co-defendant Francis Guerra"—a trial conducted before the Court in 2012. *Id.* In addition, most of the prior crimes described in that paragraph are the same crimes described in the Pre-sentence report.

The third paragraph consists of only two sentences. In the first, the Government cites to 18 U.S.C. § 3553(a)(2)(A) for the proposition that a sentence within the Guidelines range is necessary "to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment." *Id.* The Government then states, "the offense of conviction is serious, and the defendant's additional crimes indicate that he lacks respect for the law." Sentencing Letter, p. 3.

The fourth paragraph cites to 18 U.S.C. § 3553(a)(2)(B) and (C) for the proposition that a sentence within the Guidelines range is necessary to afford adequate deterrence and to protect the public. The Government then concludes:

> Because the defendant has committed crimes over a long period of time, he is in need of specific deterrence. In addition, by imposing a sentence within the Guidelines range in this case, the Court can send a message to others in the defendant's position or who are considering embarking on a life of crime, and can discourage them from doing so.

Sentencing Letter, p. 4.

7

*The Instant Motion*

By letter dated January 21, 2015, Defendant raises several issues with respect to the Sentencing Letter. First, Defendant renews its motion to withdraw his guilty plea, arguing that the Sentencing Letter breaches the Plea Agreement. Defendant reads *Persico* as holding that the Government's statements to the Probation Department did not violate the Plea Agreement because that agreement proscribed "advocacy only before the Court," and asserts that "there is no dispute that the agreement bars the government from advocating before the Court." Letter to Hon. Sandra L. Townes from Marc Fernich, dated Jan. 21, 2015, p. 2. Defendant acknowledges that the Government claims to offer the proof of his prior crimes "simply to oppose a sentence '*below*' the stipulated 37-46 month guideline range," but argues that this is a "thin pretext that scarcely cures its breach." *Id.* (emphasis in original). Citing to *United States v. Griffin*, 510 F.3d 354, 361 (2d Cir. 2007), and other cases for the proposition that the Government cannot "insulate" itself from a finding that it breached the Plea Agreement by merely disavowing any intent to violate those provisions, Defendant urges the Court to find that the Sentencing Letter violated the Plea Agreement.

Second, Defendant argues that this Court should reconsider its finding that the Government "expressly rejected" Ms. Kedia's attempt to orally modify provisions of the Plea Agreement. Specifically, Defendant argues that the Government's reliance on Ms. Kedia's representation that Defendant would request a sentence below the Guidelines range somehow implies that the Government adopted, rather than rejected, Ms. Kedia's interpretation of the Plea Agreement. Defendant also argues that the Court must "enforce what 'the defendant reasonably understood the plea agreement to mean,'" and that "oral agreements can amplify ambiguous

8

terms." Letter to Hon. Sandra L. Townes from Marc Fernich, dated Jan. 21, 2015, p. 4 (citing *Stern v. Shalala*, 14 F.3d 148, 150 (2d Cir. 1994), and *United States v. MacPherson*, 590 F.3d 215, 223 (2d Cir. 2009)).

Third, Defendant argues that this Court should reconsider its finding that Defendant's plea had an adequate factual basis. That argument has two components. First, relying on a trio of Sixth Circuit cases—*United States v. McCreary-Redd*, 475 F.3d 718, 724 (6th Cir. 2007); *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995); and *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988)—Defendant argues that courts are not permitted to draw reasonable inferences with respect to a defendant's state of mind in deciding whether a factual basis for a plea exists. Second, Defendant argues that even if courts were permitted to draw such inferences, it would be inappropriate to do so in this case since the Sentencing Letter discloses that the allegedly usurious loan was extended to a group of people who included Theodore Persico, Jr.—a captain in the Columbo crime family.

## DISCUSSION

Defendant's first argument—that the Sentencing Letter violates the Plea Agreement—misinterprets *Persico*. In that memorandum and order, the Court emphasized that "[p]lea agreements are interpreted in accordance with contract law principles," which dictate that a court not "impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *Persico*, 2014 WL 5502325, at *5. The Court then looked to the language of paragraph 11 of the Plea Agreement, and found that it unambiguously prohibited the Government from (1) taking a "position concerning where within the Guidelines range determined by the Court the sentence should fall," and (2) making a "motion for an upward departure under the

9

Sentencing Guidelines." *Id.*, at *7. The Court reasoned that since these prohibited actions could only be taken before the Court, paragraph 11 could not violated through disclosures to the Probation Department, which were then incorporated into the Pre-sentence Report. *Id.* In other words, since the Plea Agreement prohibited "advocacy only before the Court, ... advocacy before the Probation Department" could not violate the Plea Agreement. *Id.*

Quoting to that portion of *Persico* which noted that the Plea Agreement prohibited "advocacy only before the Court," Defendant asserts "that there is no dispute that the agreement bars the government from advocating before the Court." Letter to Hon. Sandra L. Townes from Marc Fernich, dated Jan. 21, 2015, p. 2. That assertion is not only disputed, but inaccurate. The Plea Agreement does not prohibit the Government from engaging in *all* advocacy before the Court. Rather, it proscribes certain types of advocacy: (1) taking a "position concerning where within the Guidelines range determined by the Court the sentence should fall," and (2) making a "motion for an upward departure under the Sentencing Guidelines." *Persico*, 2014 WL 5502325, at *7.

The Sentencing Letter does not engage in either type of prohibited advocacy. That paragraph anticipates, based on statements made by Ms. Kedia, that Defendant's current counsel will advocate for a below-Guidelines sentence. It then seeks to rebut that argument by offering various reasons why a sentence within the Guidelines range would be appropriate. Although the Sentencing Letter characterizes Defendant "as a powerful associate" in "a powerful, violent criminal enterprise," who pled guilty to a "serious crime" which "often results in violence or threats of violence" and who has demonstrated that he "lacks respect for the law" by committing "crimes over a long period of time," the Sentencing Letter repeatedly states that sentencing

10

within the Guidelines range would be appropriate. It takes no a position concerning where within the Guidelines range the sentence should fall or requests a sentence above the Guidelines range.[1]

This Court acknowledges that the Second Circuit has stated that, where the Government appears to seek to influence the court in a manner incompatible with the plea agreement, it "will not hesitate to find a breach, notwithstanding formal language of disclaimer." *United States v. Griffin*, 510 F.3d 354, 361 (2d Cir. 2007) (quoting *United States v. Amico*, 416 F.3d 163, 167 n. 2 (2d Cir. 2005)). Under the circumstances of this case, however, the Court does not perceive the Sentencing Letter as an attempt to circumvent the terms of the Plea Agreement. First, the Government had no need to persuade this Court to consider sentencing Mr. Persico above the Guidelines range since this Court, on its own initiative, ordered a *Fatico* hearing more than two months before the Sentencing Letter was even written. Second, the Government had no need to invent a pretext in order to inform the Court of Mr. Persico's involvement in the Colombo crime family, that crime family's reputation, or Defendant's criminal history. That information has

---

[1] In his Reply, Defendant argues that the Government violated the Plea Agreement by urging the Court to impose a sentence "within the advisory Guidelines range of 37 to 46 months." Sentencing Letter at 1, 4. Defendant argues that, because the Court has yet to determine the Guidelines range, urging the Court to impose a sentence between 37 and 46 months might later prove to violate paragraph 11(b) of the Plea Agreement, which prohibits the Government from taking a "position concerning where within the Guidelines range determined by the Court the sentence should fall." This argument is premature. Furthermore, even assuming that the Court were later to determine that the Guidelines range was lower than 37 to 46 months, this violation of the Plea Agreement would be so "technical" as to not require a remedy. *See, e.g., United States v. Paradiso*, 689 F.2d 28, 30-31 (2d Cir. 1982) (no remedy was required for a technical violation by the court of a binding plea agreement). It is clear from the Sentencing Letter that the Government is advocating a sentence within the Guidelines range, and merely assumes that the Court, like everyone else, will determine that the range is 37 to 46 months.

already been placed before the Court in the trial of Defendant's co-defendant, Francis Guerra; in Defendant's plea proceedings; and in the Pre-sentence Report. Moreover, the Court is likely to hear evidence substantiating these same facts at the upcoming *Fatico* hearing. Accordingly, the Government has no need to use any type of subterfuge to place these facts before the Court.

Defendant's second argument—that this Court should reconsider its finding that the Government "expressly rejected" Ms. Kedia's attempt to orally modify provisions of the Plea Agreement because the Government credited Ms. Kedia's contemporaneous statement that Defendant intends to seek a below-Guidelines sentence—is illogical and unpersuasive. Although Ms. Kedia announced her intention to seek a below-Guidelines sentence immediately after expressing her understanding of the Plea Agreement, her intentions were independent of her understanding of the Plea Agreement. The Government could fully credit Ms. Kedia's statement of intent while completely rejecting her attempt to orally modify the Plea Agreement. Accordingly, the fact that the Sentencing Letter anticipates that Defendant will seek a below-Guidelines sentence in accordance with Ms. Kedia's statement of intent does not imply that the Government now adopts Ms. Kedia's understanding of the Plea Agreement.

In addition, even if the Government had not expressly rejected Ms. Kedia's interpretation of the Plea Agreement, evidence of the parties' intentions would have been irrelevant because paragraph 11 is unambiguous. As the Court noted in *Persico*, "[i]f a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *Persico*, 2014 WL 5502325, at *5 (quoting *Torres v. Walker*, 356 F.3d 238, 245 (2d Cir. 2004)). "To be sure, extrinsic evidence can illuminate the meaning of ambiguous contract

terms." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 124 (2d Cir. 2013). However, when a contract is unambiguous, "the court is not to consider any extrinsic evidence as to the parties' intentions." *See JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009).

The first portion of Defendant's third argument—which relies on a trio of Sixth Circuit cases in arguing that the Court erred in drawing an inference with respect to Defendant's state of mind—essentially seeks reconsideration of the Court's finding that Defendant's plea had an adequate factual basis. Preliminarily, this Court notes that "[n]either the Federal Rules of Criminal Procedure nor the Local Criminal Rules expressly provide for reconsiderations." *United States v. Natal*, No. 3:12-CR-164 (JBA), 2014 WL 5361469, at *3 (D.Conn. Oct. 21, 2014) (quoting *United States v. Reyes*, No. 3:10-CR-120 (VLB), 2013 WL 1882305, at *1 (D.Conn. May 3, 2013)). However, some district courts in this Circuit have read *United States v. Clark*, 984 F.2d 31 (2d Cir. 1993)—a case which held that a motion to reconsider the denial of a motion pursuant to 28 U.S.C. § 2255 should be treated as a motion pursuant to Rule 59(e) or 60(b) of the Federal Rules of Civil Procedure—as implying that motions for reconsideration "may be filed in criminal cases and are governed by the standards applied to their civil analogues." *See, e.g., United States v. Little*, No. 12-CR-647 (ALC), 2014 WL 3604417, at *1 n. 1 (S.D.N.Y. July 16, 2014). Other courts in this district and in the Southern District of New York have applied the standard set forth in Local Civil Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York without expressly relying on *Clark*. *See, e.g., United States v. Cean*, No. 11 CR 449 (SJ), 2014 WL 1832963, at *1 (E.D.N.Y. May 8, 2014) (noting that courts in this district have applied the standard of Local Rule 6.3 when addressing motions for reconsideration in criminal cases); *United States v. Yannotti*, 457 F. Supp. 2d 385, 388 (S.D.N.Y. 2006) (noting that "motions for reconsideration in

criminal cases have traditionally been allowed within the Second Circuit" and that "district courts have applied the standard found in Rule 6.3 of the Local Civil Rules" to such motions).

The standard for reconsideration in civil cases is "strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Under this standard, a motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* Local Civil Rule 6.3 reflects this standard, requiring that the party requesting reconsideration file "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked."

In this case, Defendant seeks reconsideration based on (1) out-of-Circuit cases, one of which was actually cited by this Court in *Persico* and (2) facts of which the Court was already aware. First, Defendant cites to three Sixth Circuit cases: *McCreary-Redd*, *Tunning*, and *Goldberg*. The cases are not controlling upon this Court, and none of the three has ever been cited—much less followed—by the Second Circuit.

Second, this line of Sixth Circuit cases was not overlooked. Indeed, *Persico* cited to *Tunning*, albeit for a different proposition of law. This Court read the entirety of that Sixth Circuit opinion and was aware that it contains the following sentence:

> Although we agree that a rational fact finder could infer an intent to defraud from such evidence, in the context of a challenge to the factual basis supporting a guilty plea, we have previously rejected a request by the government to infer a "critical element" of the offense charged.

*Tunning*, 69 F.3d at 113 (*Goldberg*, 862 F.2d at 106). However, after reading *Goldberg* itself, the Court interpreted this sentence as dictum, not as espousing a black-letter rule prohibiting a

court from inferring intent in the course of determining whether there exists a factual basis for a guilty plea.

In *United States v. Goldberg*, 862 F.2d 101 (6th Cir. 1988), a physician pled guilty to misprison of a felony in connection with a fraudulent scheme in which a pharmacist would add items to the physician's prescriptions. One of the elements necessary to sustain a conviction for this crime was that the physician "took affirmative steps to conceal the crime" of the pharmacist. However, while the physician admitted during the plea proceedings that he knew of the pharmacist's actions and concealed his knowledge of those actions, no one adduced evidence at the plea proceeding that the physician engaged in any affirmative steps to conceal the crime.

Faced with this deficient record, the prosecution urged the court to infer the affirmative steps from the fact that the physician was highly educated and adequately represented. As the Sixth Circuit understood it, the Government argued that one could infer from these facts that when the doctor stated that he had "concealed his knowledge," he "meant that he had 'actively' concealed his knowledge, thereby satisfying the critical element in the offense of misprision of a felony, i.e., that [he] took affirmative steps to conceal the crime of the principal." *Id.* at 106 (brackets added). The Sixth Circuit rejected this argument, stating, "to permit the district court to infer a factual basis in the absence of a record demonstrating the existence of a factual basis would tend to negate the well-established safeguards inherent in the Rule 11(f) mandate." *Id.*

In *United States v. Tunning*, 69 F.3d 107 (6th Cir. 1995), the defendant entered an *Alford* plea to a violation of 18 U.S.C. § 1029(a)(2), a statute which "makes it a crime if someone 'knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or

15

more during that period.'" *Id.* at 112. To establish the defendant's guilt of this crime, "the government needed to establish that Tunning had the intent to defraud both when he obtained the [access device] and when he used [it] to obtain goods or services." *Id.* at 113 (brackets added). However, while the Government asserted at the plea proceedings that "[t]here were a variety of facts and circumstances surrounding the entire indictment that would have gone to the issue of intent," the Government relied on "bare assertions ... that evidence at trial would have established certain facts," without offering "any indication of what evidence support[ed] those facts." *Id.* at 114 (brackets added). Noting that "a bare statement from the prosecutor that he would have proven that the defendant acted with the intent to defraud does not ensure 'through some evidence' that the plea is accurate," the Sixth Circuit held "that where ... the defendant pleads guilty but refuses to admit to conduct that demonstrates a factual basis for the plea, if the government undertakes to establish the factual basis by reciting what facts it would have proven at trial, the prosecutor must also identify the evidence it has to prove those facts." *Id.*

In *United States v. McCreary-Redd*, 475 F.3d 718 (6th Cir. 2007)—another case cited by Defendant—the Sixth Circuit relied on *Goldberg* and *Tunning* in finding that a plea allocution failed to establish that the defendant possessed drugs with intent to distribute them. During the plea, the Government did not make any statements regarding the offense or the intent element of the drug charge and the district court never asked McCreary-Redd to state, in his own words, what he believed to be the crime he committed. *Id.* at 723. Rather, the finding of intent to distribute rested solely on a stipulation that "officers recovered a vial attached to McCreary-Redd's key chain which contained ... approximately 3.0 grams [of crack cocaine] that was individually wrapped and packaged for resale." *Id.* (brackets and ellipsis added). Noting

16

that McCreary-Redd was apprehended while exiting a building in a neighborhood with illegal drug activity, the Sixth Circuit found that "one could equally conclude that McCreary-Redd had just purchased the substance, which would have been individually wrapped and packaged 'for resale,' for personal use," and that the stipulation did not permit the inference that McCreary-Redd intended to distribute the drugs. *Id.* at 724.

In this case, in contrast, the record contains facts permitting the inference that Mr. Persico acted with the requisite intent. During his plea allocution, Defendant stated that he "arranged for someone to extend $100,000 loan to the trucking company run by James Bambino [*sic*] and Steve Marcus at a usurious interest rate." *Persico*, 2014 WL 5502325, at *3. The Government corroborated this statement—noting that the loan was made "at a rate of interest in excess of the annual rate of 45 percent per year"—and stated that Bombino and Marcus "believed that Mr. Persico and his coconspirators had a reputation for the use of extortionate means to collect extensions of credit." *Id.* In light of Second Circuit case law holding that the requisite state of mind could "reasonably be inferred from the terms of the loans ... extended," *United States v. Lombardozzi*, 491 F.3d 61, 71 (2d Cir. 2007), the facts set forth during the plea proceeding were sufficient to provide a factual basis for Mr. Persico's plea.

The second portion of Defendant's third argument essentially argues that this Court should reconsider its finding that there was a legal basis for Defendant's plea because the Sentencing Letter discloses that the allegedly usurious loan was extended to a group of people who included Theodore Persico, Jr., a captain in the Columbo crime family. This Court recognizes that its "obligations under Rule 11(f) continue until it has entered judgment." *United States v. Smith*, 160 F.3d 117, 121 (2d Cir. 1998). However, the Court also recognizes that Fed.

R. Crim. P. 11 requires only that it determine whether there is a factual basis for the plea. Rule 11 "does not require the district court to weigh any evidence or predict what a jury would do with the case," *Smith*, 160 F.3d at 121, or "replicate the trial that the prosecutor and defendant entered a plea agreement to avoid." *United States v. Lumpkins*, 845 F.2d 1444, 1451 (7th Cir.1988).

Defendant's argument regarding the terms and recipients of the loan relies exclusively on facts which were not only not adduced at the time of the plea proceedings, but which are contrary to the facts that were adduced. First, Defendant's assertion that he made an open-ended loan to Theodore Persico, Jr., and his business partners is contrary to what he stated during his plea allocution: namely, that he arranged for a "loan to the trucking company run by James Bambino [*sic*] and Steve Marcus at a usurious interest rate." Plea Transcript, p. 23. Similarly, the assertion that Theodore Persico's partners could not have been in fear of what would happen if they failed to repay the loan is contrary to the Government representations that it was "prepared to prove at trial that [Bombino and Marcus] believed that Mr. Persico and his coconspirators had a reputation for the use of extortionate means to collect extensions of credit." *Id.*, p. 24. In order to determine which version of the facts is correct—the version set forth during the plea proceedings or the version now espoused by Defendant—this Court would essentially have to have to "replicate the trial that the prosecutor and defendant entered a plea agreement to avoid." *Lumpkins*, 845 F.2d at 1451.

## *CONCLUSION*

For the reasons set forth above, Defendant's renewed motion to withdraw his plea of guilty and his motion for reconsideration of this Court's ruling that there was an adequate factual basis for that plea are denied.

**SO ORDERED.**

/s/ Sandra L. Townes
SANDRA L. TOWNES
United States District Judge

Dated: February 27, 2015
Brooklyn, New York